UNITED STATES of America,
Plaintiff-Appellee,

v.

Michael Ray TOWNLEY,
Defendant-Appellant.

No. 80–2295.

United States Court of Appeals,
Fifth Circuit.

Jan. 11, 1982.

Floyd D. Holder, Jr., Lubbock, Tex., for defendant-appellant.

Paulina M. Jacobo, Asst. U. S. Atty., Lubbock, Tex., for plaintiff-appellee.

Before INGRAHAM and TATE, Circuit Judges *.

TATE, Circuit Judge:

The defendant-appellant, Michael Ray Townley, was tried and convicted of seven counts of criminal mail fraud, in violation of 18 U.S.C. § 1341.[1] He received concurrent five-year sentences of imprisonment, with all but six months suspended. Townley raises only one point of error on this appeal. He contends that he was denied due process because of the substantial prejudice to him in presenting his defense resulting from a lengthy pre-indictment delay. Although actual prejudice did result from the lengthy pre-indictment delay, we find that, balancing the prejudice to the defendant against the government's reasons for the delay, the resultant prejudice was not so substantial as to require the conviction to be reversed for a denial of due process.

I

The claim of due-process prejudice is based upon the following skeletal facts: From April through June 19_76_, the defendant Townley and a partner engaged in a scheme to sell water-purification vending machines to investors. In June 1976, Townley withdrew from the scheme, convinced that his partner had diverted funds from the enterprise for personal use and had made changes in the plans of operation that made the enterprise unworkable. In early 1977, upon receiving complaints that none of the machines had been delivered, a postal inspector investigated the circumstances. In late 1977, he concluded that the scheme was fraudulent and involved violations of the mail fraud statutes. The inspector reported his findings to the United States Attorney's office in January 1978. In late November 1979 Townley was indicted, some three and one-half years after the conduct had occurred. He received his first notice of the criminal charges against him when he was arrested in California on April 14, 1980, some forty-six months after the conduct had occurred. After a continuance

---

* Due to his death on December 22, 1981, Judge Ainsworth did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. § 46(d).

1. 18 U.S.C. § 1341 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

The statute of limitations for such an offense is five years. 18 U.S.C. § 3282.

was secured from the initial trial date, his jury trial commenced on September 15, 1980.

A pretrial hearing was held on Townley's motion to dismiss for prejudice resulting from the lengthy pre-indictment delay and the subsequent post-indictment delay until the defendant's arrest, at which time he received the first notice that his conduct had subjected him to criminal charges. At the conclusion of the hearing, the district court reserved its ruling on the motion; at the conclusion of the evidence, the district court denied the motion.

The showings made at the pretrial hearing reveal: Townley at no time had attempted to conceal his whereabouts. When he left the Texas area in which the enterprise had been conducted, an area with which he had minimal pre-enterprise contact, he returned to a California area of employment. The postal inspector had made efforts to locate Townley, but with few leads to follow had made only somewhat desultory efforts to find him. (Townley's partner had disappeared and had not been located even at the time of the trial.) On the other hand, there is not the slightest intimation that the government's delay in indicting or arresting Townley was founded on bad faith motive to prejudice him. The delays occurred, rather, due to the press of other investigations and the seeming low-priority accorded to the present investigation, and because of changes of governmental prosecuting personnel.

## II

The Supreme Court cases of *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), and *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), define the criteria to be applied in determining whether lengthy pre-indictment delay deprives a defendant of due process of law.

In *Marion*, in holding that no Sixth Amendment denial of speedy trial is occasioned by pre-indictment delay, the Court noted that the primary guarantee against bringing overly stale criminal charges is provided by the legislative limits provided by statutes of limitations, 404 U.S. at 322, 92 S.Ct. at 464, but that the Due Process Clause of the Fifth Amendment also has a limited role to play in protecting against oppressive delay that prejudices an accused's right to a fair trial, 404 U.S. at 324–26, 92 S.Ct. at 465–66. The Court accepted the government's concession that due process will *require* dismissal of an indictment where it is "shown that the pre-indictment delay caused substantial prejudice to [an accused's] right to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." 404 U.S. at 324, 92 S.Ct. at 465.

In *Lovasco*, the Court elaborated on the test. There, the accused was somewhat prejudiced for trial by an eighteen-month delay in indictment subsequent to the conduct charged. In reversing a dismissal on that account, the Court stated that "proof of prejudice is generally a necessary but not sufficient element of a due process claim," and that "the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." 431 U.S. at 790, 97 S.Ct. at 2048–49. The Court then balanced the prejudice to the accused against the prosecution's reason for the delay—a good-faith continuing investigation—and found that due process was not offended by the delay: *i. e.*, the delay did not violate "'fundamental conceptions of justice'", 431 U.S. at 791, 97 S.Ct. at 2049, or "elementary standards of 'fair play and decency'", 431 U.S. at 795, 97 S.Ct. at 2051. The Court thus found the eighteen-month delay in the indictment did not deprive the accused of his due process right to a fair trial, even though he may have been "somewhat prejudiced by the lapse of time." 431 U.S. at 796, 97 S.Ct. at 2052.

Thus, in evaluating an asserted due process violation based on pre-indictment delay, *Lovasco* and *Marion* require us "to consider both the reasons for the delay and the prejudice to the accused." *United States v. West*, 568 F.2d 365, 367 (5th Cir. 1978). Further, the accused bears the burden of proving the prejudice and, if the

threshold requirement of proof of actual prejudice is not met, the inquiry ends there. *Id.* Once actual prejudice is shown, it is necessary to engage "in a sensitive balancing of the government's need for an investigative delay ... against the prejudice asserted by the defendant." *United States v. Brand*, 556 F.2d 1312, 1317 n.7 (5th Cir. 1977). The inquiry turns on "whether the prosecution's actions violated 'fundamental conceptions of justice' or the community's sense of fair play and decency." *United States v. Shaw*, 555 F.2d 1295, 1299 (5th Cir. 1977). "Inherent in the adoption of a balancing process is the notion that particular reasons are to be weighed against the particular prejudice suffered on a case-by-case basis." *United States v. King*, 593 F.2d 269, 272 n.3 (7th Cir. 1979).

In the case presently before us, the government's thirty-six month delay in securing the indictment was only partly occasioned by investigative reasons (eighteen months or so); the remainder was occasioned by the low priority assigned to this investigation and to the overload of other investigative and prosecutive responsibilities allocated to the available personnel. As we shall show, see III *infra*, the accused was actually prejudiced by the delay— whether "somewhat" (as we find) or "substantially" (as the defendant contends). The present due process issue relative to the deprivation of a fair trial by the lengthy delay thus turns upon whether the degree of prejudice thereby sustained by the accused is sufficiently balanced by the good-faith reasons advanced by the government; the latter, however, amount to excusing the delay because of inadequate numbers of processing personnel rather than to investigative or other needs relating to the proper preparation of the present case.

▮ We should, at this point, briefly note a contention advanced by the government in brief but not urged at oral argument. Based on statements to that effect by way of dicta in some of our decisions,[2] the government initially suggested that, even if actually prejudiced, an accused could not prevail upon his due process claim unless he also proves that the delay resulted from intentional tactical delay or harassment on the part of the government. To the contrary, an earlier decision of this circuit has noted, consistent with holdings in earlier decisions of this circuit, that *Lovasco* and *Marion* do not stand for the proposition "that governmental interests *not* amounting to an intentional tactical delay will automatically justify prejudice to a defendant." *United States v. Brand, supra*, 556 F.2d at 1317 (n.7). Here, the *Lovasco* balancing test would be reduced to mere words, if indeed the government's 41-month delay in bringing the indictment were excusable, whatever the prejudice caused the defendant, simply by a showing that the government was negligent, however grossly, and not bad-intentioned.

### III

The government's theory of the case is that the defendant Townley, in conjunction with his partner Owens, knowingly and willfully devised a scheme to obtain money, by means of false and fraudulent representations, from persons who were induced to purchase and invest in then non-existent vending machines to purify and dispense water, and that this scheme used the United States mails in furtherance of its fraudulent ends.

The evidence shows that most of the initiative for the venture originated with Ow-

2. The statement is for the most part found in decisions that found that the defendant did not meet the threshold requirement of proving actual prejudice, so that the government's justification for the delay was not brought into issue: *United States v. Henricks*, 661 F.2d 38 (5th Cir. 1981); *United States v. Ramos*, 586 F.2d 1078, 1079 (5th Cir. 1978); *United States v. Willis*, 583 F.2d 203, 207 (5th Cir. 1978); *United States v. Avalas*, 541 F.2d 1100, 1107 (5th Cir. 1976); *United States v. Butts*, 524 F.2d 975, 977 (5th Cir. 1975). The general statement of the governmental malice requirement is also found in at least two other decisions, but there the reason for the government's delay was factually reviewed and found justified (as in *Lovasco*) by investigative needs: *United States v. Nixon*, 634 F.2d 306, 309–10 (5th Cir. 1981); *United States v. Durnin*, 632 F.2d 1297, 1299 (5th Cir. 1981).

ens, Townley's partner. However, Townley was a full partner in the scheme and an active and successful salesman for the machines during his three months of association with the enterprise between April and June of 1976.

The essence of the enterprise was that it was to sell vending machines to individual purchaser-investors at the price of $3,660, to secure a prime location for each machine purchased and to install it, and to service the water-purifying canisters in the machines. To supply a supposed need in urban areas for water cleaned of impurities, the machines were to be placed in supermarket areas and would, for a quarter, dispense a gallon of purified water. Owens and Townley intended to manufacture the cabinets for the machines, and to lease the purifying equipment to be installed therein (and serviced by the lessor company). The investor was to retain 80% of the proceeds, and to remit 20% of them each month to the Owens-Townley company.

To execute the scheme, the enterprise placed advertisements in newspapers in several large Texas cities to solicit investment in and purchase of the machines by "affiliates", responded to inquiries usually by mail, and made arrangements for an interview. At the interview each potential affiliate was to be persuaded to sign an "affiliate agreement" for purchase of the vending machine. The allegedly fraudulent representations upon which the government relied in its proof concerned in the main the contents of the advertisements, the correspondence, and the representations made by Townley in the sale of the machines.

The chief prejudice that Townley claims resulted from the delayed charges was his resultant inability to obtain evidence to establish his defense of good faith and lack of criminal intent [3]—i. e., his inability to show that he really believed that the enterprise could furnish and service the dispensers for the price sought and that the machines were indeed a viable investment for their purchasers. And, indeed, had the thrust of the government's case been that Townley well knew that he and Owens could not deliver the machine sold or that the scheme could not be successful, we are unable to say that the claimed delay-caused prejudice would not have been so substantial as to constitute a deprivation of due process in the presentation of that defense. (By the time Townley learned of the criminal charges against him, the enterprise's telephone records had been destroyed, and he was unable to recall or corroborate many of the specific details concerning the financial estimates, design, preparation, and other activities that would have corroborated his testimony that he had engaged in significant legitimate preparation for sale of the machines and had reason to expect that the enterprise would not fail, as it did—without delivery of a single machine, and with production of only one model.)

Instead, however, the main thrust of the government's case concerned misrepresentations made by Townley in the sale of the machines, and those contained in the advertisements and correspondence relating to these sales. Since Owens and Townley had

3. For present purposes, both parties concede that the district court's instructions to the jury adequately charged the basis of this defense:

Fraudulent intent is one of the essential elements of the offenses with which the defendants are charged. Fraudulent intent is not presumed or assumed; it is personal and not imputed. One is chargeable with his own personal intent, not the intent of some other person. Bad faith is an essential element of fraudulent intent. Good faith constitutes a complete defense to one charged with an offense of which fraudulent intent is an essential element. One who acts with honest intention is not chargeable with fraudulent intent. One who expressed an opinion honestly held by him, or a belief honestly entertained by him, is not chargeable with fraudulent intent even though such opinion is erroneous and such belief is a mistaken belief. Evidence which establishes only that a person made a mistake in judgment or an error in management, or was careless, does not establish fraudulent intent. In order to establish fraudulent intent on the part of a person, it must be established that such person knowingly and intentionally attempted to deceive another. One who knowingly and intentionally deceives another is chargeable with fraudulent intent notwithstanding the manner and form in which the deception was attempted.

zero capital to finance the enterprise, its initiation and all investment costs had to be derived from the investor-purchasers. Townley's own witnesses, investors whom he warned to stop payment on checks after he learned of various fraud-leaning actions of his partner Owens, admitted that they would not have invested in the enterprise had they known it did not have any machines in operation, or that it had never successfully conducted the business anywhere.

The government produced witnesses who testified that Townley himself, or Owens in his presence, had stated that their companies had machines in operation in most of the principal cities in Texas, as well as in other areas of the country. Townley himself showed pictures of machines that had been taken by him and Owens at the manufacturing plant of another company, and he implied that they were machines belonging to his own enterprise. Further, to begin the search for investors/purchasers, the Townley-Owens enterprise, which was called Crystal Springs Water, placed an ad in several Texas newspapers which invited readers to "[s]hare in the high profits of our patented: AUTOMATIC PURIFIED WATER DISPENSERS." The ad stated that the dispensers had had "[o]utstanding public acceptance proven at major grocery chains for over six years." Persons who responded to this ad received a letter signed by Owens stating that "Crystal Springs Water's primary business has been supplying bottled drinking water to residential and commercial customers. However, due to extraordinary demands for fresh drinking water, our company developed a unique dispenser that is placed at major grocery outlets."[4] (The letter further stated that a representative of the company would be in contact with the person who responded to the ad.)

In reality, of course, Crystal Springs Water had no patents, no machines and had not been in the business of supplying bottled drinking water to anyone. Furthermore, while it is true that the coin operated purified water dispenser *concept* had gained public acceptance through the efforts of other companies, Crystal Springs Water had not operated at any store at all, let alone for over six years.

Unfortunately for Townley, all of the evidence that he contends would have been available had the government indicted him more quickly tends to corroborate only Townley's claim that he intended to deliver the machines, and that he left the enterprise as soon as he began to have serious doubts that his partner Owens intended to deliver. However, even assuming that all Townley asserts in this regard is true, this would not have exonerated him—although we cannot say that he was not somewhat prejudiced, in that the jury might have found more excuse for his misrepresentations, in the light of more substantial evidence of the probable success of the enterprise.

▆ Townley does not, and cannot, dispute that he was a full partner in the enterprise at the time the misleading newspaper ads were published and at the time that the misleading letters were sent to several potential investors in response to their expressions of interest in the venture as described in the ad. And, of course, it was Townley himself who showed pictures of the other company's machines to the

---

4. The ad stated in full:

## NO COMPETITION

Wanted reliable part-time business affiliate. Returnable deposit of $3160 required. No selling. Share in the high profits of our patented:

## AUTOMATIC PURIFIED WATER DISPENSERS
UP TO $750 A MONTH OR MORE

Your customers will enjoy saving 60% on the cost of bottled drinking water. No heavy bottles to lift. 24-hour convenience.

Outstanding public acceptance proven at major grocery chains for over 6 years.

- Location, delivery & full installation provided.
- Guaranteed minimum monthly income of $300.
- No overhead.
- 6-8 hours monthly
- 100% expansion financing available.

For more information, send name & telephone number to CRYSTAL SPRINGS WATER, 2124 50th, Dept. 3, Lubbock, Texas 79412.

Member of South Plains Better Business Bureau & Lubbock Chamber of Commerce.

potential investors and led them to believe that Crystal Springs Water was a successful company that had operated in this area successfully for years. Townley denies that he made any *express* misrepresentations that the company had been in business successfully for years; but, under the mail fraud statute, it is just as unlawful to speak "half truths" or to omit to state facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.[5] The statements need not be false or fraudulent on their face, and the accused need not misrepresent any fact, since all that is necessary is that the scheme be reasonably calculated to deceive persons of ordinary prudence and comprehension, and that the mail service of the United States be used in the execution of the scheme.[6]

The defendant's claim of prejudice stems from his assertion that the long delay hurt his chance of proving to the jury that he intended in good faith to deliver the machine and build up a legitimate business. However, no amount of good-faith intent to deliver and good-faith belief in the ultimate success of the business could constitute a good-faith defense exculpating Townley from criminal liability for his false and misleading statements in connection with the ads, letters, and statements by Townley himself in the interviews, by which the investors/purchasers funds were obtained.[7]

▪ Thus, although Townley may have been somewhat prejudiced in his ability to corroborate his own testimony of good-faith preparation and belief in the successful possibilities of the enterprise, that particular prejudice was not so substantial as to constitute a denial of due process, in the context of the actual evidence of particular guilt presented by the government. Nor was he substantially prejudiced, in fact, by any delay-caused inability to recall or locate investor-purchasers who might have testified to salesmanship on his part that did not involve misrepresentations of the order proved; for, at the time of the dissolution of the enterprise, the attorney for the enterprise had made a list of all such investor-purchasers, as expressly called for in the dissolution agreement.[8]

At the pretrial hearing, the defendant's counsel was able to show the extreme difficulty in investigating and preparing Townley's defense, because of the length of the elapsed time. The showing also discloses that his energetic and resourceful defense counsel was able to surmount some if not most of the difficulties. However, as defense counsel argues, the memories of witnesses he located were dim, nor is he assured that, due to the inability of Townley to recall facts and people so long ago, leads were not uncovered that might have led to testimony favorable to Townley.

Insofar as counsel was unable to corroborate Townley's testimony that (after he had discovered Owens' fraud) he had informed the financing company not to approve any further applications for credit by investor-purchasers, the government expressly stat-

5. See, e. g., United States v. Allen, 554 F.2d 398, 410 (9th Cir.), cert. denied, 434 U.S. 836, 98 S.Ct. 124, 54 L.Ed.2d 97 (1977); Gusow v. United States, 347 F.2d 755, 756 (9th Cir.), cert. denied, 382 U.S. 906, 86 S.Ct. 243, 15 L.Ed.2d 159 (1965); Lustiger v. United States, 386 F.2d 132, 138 (9th Cir. 1967), cert. denied, 390 U.S. 951, 88 S.Ct. 1042, 19 L.Ed.2d 1142 (1968); Blachly v. United States, 380 F.2d 665, 673–74 (5th Cir. 1967); Williams v. United States, 368 F.2d 972 (10th Cir. 1966), cert. denied, 386 U.S. 997, 87 S.Ct. 1317, 18 L.Ed.2d 345 (1967).

6. United States v. McNeive, 536 F.2d 1245, 1249 n. 10 (8th Cir. 1976); Silverman v. United States, 213 F.2d 405, 405 (5th Cir.), cert. denied, 348 U.S. 828, 75 S.Ct. 46, 99 L.Ed. 653 (1954).

7. See, e. g., United States v. Beecroft, 608 F.2d 753, 757 (9th Cir. 1979); United States v. Diamond, 430 F.2d 688, 691–92 (5th Cir. 1970); United States v. Painter, 314 F.2d 939, 943 (4th Cir. 1963); Moare v. United States, 2 F.2d 839, 842–43 (7th Cir. 1924), cert. denied, 267 U.S. 599, 45 S.Ct. 354, 69 L.Ed. 807 (1925).

8. Although the agreement expressly called for this list to be provided to Townley, and although Townley had a copy of the dissolution agreement, neither Townley nor his able trial attorney thought to secure this list, until it was turned over to him by the government at the pre-trial hearing on the motion to dismiss.

ed it would not dispute Townley's testimony (tr. 61), and neither by argument nor evidence did it attempt to cast doubt upon this creditable act by Townley or upon his two customer-witnesses whose testimony tended to corroborate him. The government further made full disclosure of its files to Townley's attorney to aid him in the preparation of the defense.

## IV

In summary, the lengthy pre-indictment delay somewhat prejudiced Townley in the preparation and conduct of his defense. The government's reason for the delay, prosecutorial overload and insufficient personnel, might be entitled to slight weight in the balance of due process considerations, if indeed Townley had sustained substantial prejudice. However, under the facts as presented by the government in its case, the prejudice sustained was not sufficiently substantial as to significantly deprive him of an opportunity to present his defense as to the actual conduct relied upon by the government, the fraudulent and false representations made or concurred in by Townley that induced the purchasers to invest in the enterprise. The government commendably attempted to minimize what prejudice was occasioned Townley through the delay, by making full disclosure of its files and by expressly agreeing not to contest exculpatory testimony by Townley as to which the lapse of time might have deprived him of a former finance-company employee as a corroborating witness (although the government had available a present finance-company employee who would have cast doubt on Townley's exculpatory testimony). Balancing the prejudice against the good-faith reason for the delay, we are unable to say that Townley was denied due process or a fair trial under the present circumstances.

*Conclusion*

Accordingly, the conviction is AFFIRMED.

AFFIRMED.