**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                      No. 97-4102

LOUIS R. JACKSON,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, Leonie M. Brinkema, District Judges.
(CR-96-260-A)

Argued: October 30, 1997

Decided: December 12, 1997

Before WILKINSON, Chief Judge, MOTZ, Circuit Judge,
and CAMPBELL, Senior Circuit Judge of the United States Court
of Appeals for the First Circuit, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Veta Medica Carney, CARNEY & CARNEY, Alexandria, Virginia, for Appellant. Deborah Ann Brinley, Trial Attorney, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, Gerald E. McDowell, Chief, Asset Forfeiture and Money Laundering Section, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury convicted Louis Jackson of two counts of distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1), and the court sentenced him to a term of imprisonment of 121 months on each count to run concurrently. Jackson appeals, raising multiple issues. Finding no reversible error, we affirm.

I.

In September 1994, Detective John Wallace of the Fairfax County Police Department, working as an undercover agent, investigated a crack cocaine dealer named "Louie." A confidential informant, now dead, informed Detective Wallace about Louie, but did not provide the agent with a last name. Detective Wallace then arranged to buy crack from Louie.

On September 14, 1994, Louie met with Detective Wallace and the informant. Louie sold Detective Wallace 25 grams of crack cocaine for $1,300. Detective Wallace and Louie discussed further crack cocaine sales and Louie gave the informant permission to give Detective Wallace Louie's pager number. On September 27, Detective Wallace paged Louie and asked to buy two ounces of crack cocaine from Louie. Louie agreed and, the next day, sold the agent approximately 46 grams of cocaine for $2,100.

Louis Jackson was not indicted until July 2, 1996-- almost two years after the drug buys that gave rise to the charges. Although at trial Detective Wallace could not positively identify Jackson as "Louie," the prosecution presented other evidence linking Jackson to these crimes and the jury convicted him of two counts of distribution of crack cocaine. This appeal followed.

2

II.

Jackson argues that the delay of approximately two years between the date of the drug transactions and his indictment constituted prejudicial error, requiring dismissal of the indictment. To determine whether preindictment delay gives rise to a violation of the Due Process Clause of the Fifth Amendment, we examine: (1) whether the defendant can show that he has suffered any actual substantial prejudice, and, if so, (2) whether the reasons for the delay justify the prejudice to the defendant. See United States v. Automated Medical Laboratories, Inc., 770 F.2d 399, 403 (4th Cir. 1985).

In order to show that he has suffered actual substantial prejudice, a defendant cannot rely on speculation. Id. at 404. For example, although the defendant in Automated Medical Laboratories identified a particular witness that would have testified had there not been preindictment delay, we noted that the content of the witness' testimony remained "highly speculative" and found little, if any, prejudice to the defendant from the delay. Id. In this case, Jackson's submission is even more speculative. He generally asserts that because of the delay he could not develop favorable information from witnesses to the drug transactions but is unable to identify any favorable witness or evidence that was lost because of delay. Asserted general difficulty in developing a potential defense does not amount to actual prejudice. Id. at 403; United States v. Townley, 665 F.2d 579 (5th Cir. 1982). Because Jackson has not demonstrated actual substantial prejudice resulting from the preindictment delay, we need not examine the Government's reasons for the delay. See Townley, 665 F.2d at 581-82 ("[T]he accused bears the burden of proving prejudice and, if the threshold requirement of proof of actual prejudice is not met, the inquiry ends there.").

III.

Prior to trial, the defense moved to suppress Detective Wallace's identification of Jackson and for a hearing on that motion out of the presence of the jury. Jackson asserts that the district court erred in denying both motions.

We review the district court's decision as to whether to grant an evidentiary hearing for abuse of discretion. See United States v.

3

Whittington, 26 F.3d 456 (4th Cir. 1994). Its decision as to whether to suppress an identification is a mixed question of law; we subject the court's ultimate conclusion to de novo review, but "construe the [underlying] evidence in the manner most favorable to the government." United States v. Han, 74 F.3d 537, 540 (4th Cir. 1996).

Conducting a hearing outside the presence of the jury to "determine the admissibility of identification evidence" has long been recognized as the "prudent" course. See Watkins v. Sowders, 449 U.S. 341, 345 (1981). However, the Supreme Court has held that, because cross-examination before the jury is ordinarily sufficient to determine the trustworthiness of identification evidence, the Constitution generally does not require a judicial determination outside the presence of the jury. Id. at 349.

In Watkins, the Court did leave open the possibility that, "[i]n some circumstances ... such a determination [outside the jury's presence] may be constitutionally necessary." Id. In this case, however, Jackson has failed to demonstrate any circumstances that would require such a hearing, or that would establish that the district court abused its discretion in refusing to grant such a hearing. Jackson had knowledge of Detective Wallace's identification prior to trial and the opportunity to cross-examine Detective Wallace about the in-court identification. Cf. United States v. Muse, 83 F.3d 672, 675 (4th Cir. 1996); United States v. Mills, 704 F.2d 1553, 1565 (11th Cir. 1983) (requiring a hearing outside the jury's presence only when there are "unusual" circumstances). As the Supreme Court noted in Watkins, "cross-examination has always been considered a most effective way to ascertain truth." 449 U.S. at 349.

Nor did the district court err in refusing to suppress Detective Wallace's in-court identification. Jackson contends that because the drug buys preceded the trial by two years, and so Detective Wallace had not seen Louie for two years, the agent's in-court identification was unreliable. While Detective Wallace testified that he believed Jackson was Louie, he admitted that he was unable to identify Jackson as Louie in court with "a hundred percent" degree of certainty. Detective Wallace stated that Jackson looked older and more cleaned up than he had remembered Louie. All these facts go to the weight to be given an identification, not its admissibility. Determination of the weight to

4

be given evidence is a question for the jury, rather than a reason for the court to suppress an identification. See Watkins v. Sowders, 449 U.S. 341, 347 (1980) (noting that evaluating the weight of the evidence is for the jury).

IV.

Next, we address the admission of a tape and transcript of recorded drug transactions with Louie. We review decisions regarding the admission of evidence for abuse of discretion. United States v. Whittington, 26 F.3d 456, 465 (4th Cir. 1994).

At trial, the Government introduced a tape recorded conversation between Detective Wallace and Louie and transcript of the tape. Detective Wallace had paged Louie on October 6, 1994, and then recorded their subsequent telephone conversation. The recording was played for the jury and DEA Agent Timothy Scott, the officer who processed Jackson upon his arrest, identified Louie's voice on the tape as Jackson's. Jackson makes two arguments concerning the admission of the tape and transcript.

First, Jackson argues that Agent Scott was incompetent to identify Jackson's voice. Agent Scott processed Jackson when Jackson was arrested and spoke with Jackson during the processing. Agent Scott then identified the voice of the drug dealer on the tape as Jackson's. Under Rules 601 and 701 of the Federal Rules of Evidence, Agent Scott is competent to make such a voice identification as lay opinion testimony. Fed. R. Evid. 701, 601.

Alternatively, Jackson argues that the prejudice caused by admission of the tape far outweighs any possible probative value. Jackson points to the comments on the tape concerning the distribution of a larger quantity of crack cocaine, which never took place. He argues that references to that larger quantity of illegal drugs unduly prejudiced him.

Only if unfair prejudice substantially outweighs the probative value of evidence must the evidence be excluded. Fed. R. Evid. 403. In this case, that standard has not been met. Jackson's willingness to discuss

5

drug sales is highly probative to the charge that he completed those sales. Any unfair prejudice was slight -- the larger uncharged drug sale was not discussed in detail on the tape. Nor did the Government base any argument on that larger sale; in fact, Detective Wallace testified that the larger drug sale discussed on the tape never occurred.

The district court did not err in admitting the tape and transcript.

V.

Jackson contends that the district court should have declared a mistrial when Detective Wallace referred to a photograph of Jackson as a "police" photograph. We review the district court's denial of a motion for mistrial for abuse of discretion. See United States v. Arrington, 757 F.2d 1484, 1485 (4th Cir. 1985).

Detective Wallace testified at trial that as part of his investigation he had obtained a 1980 photograph of Louis Jackson, which was introduced at trial as Exhibit 3. Jackson stipulated that Exhibit 3 was a photograph taken of him on August 11, 1980. Detective Wallace testified that he looked at this photograph before and after he met with Louie, and that he was absolutely certain the man pictured in Exhibit 3 was Louie. While testifying at trial, Detective Wallace referred to Exhibit 3 as a "police photograph." Based on this characterization, defense counsel moved for mistrial. The court denied this motion and instead offered to give a curative instruction, but defense counsel declined that offer.

Detective Wallace's one-time reference to Exhibit 3 as a "police" photograph does not mandate a new trial. Cf. United States v. Bennett, 984 F.2d 597, 608 (4th Cir. 1993) (prosecutor's reference to defendant as being in custody was not so prejudicial as to warrant a new trial); United States v. Carrillo, 20 F.3d 617, 620 (5th Cir. 1994) (admission of photographs upheld despite police officer's comment that photographs were from police files). United States v. Harmon, 349 F.2d 316 (4th Cir. 1965), upon which Jackson relies, is not to the contrary. There, we held that the district court erred in admitting photographs showing the defendant in prison attire and clearly identifying the defendant as an inmate. Here, Detective Wallace made only one reference to Exhibit 3 as a police photograph and the photograph

6

itself does not indicate that Jackson had been arrested or convicted of any crime.

VI.

Jackson also maintains that the admission of another photograph of him and the prosecutor's reference to it constitute reversible error.

A.

The Government introduced as Exhibit 5 a photograph, which Jackson stipulated was in fact a photograph of him taken on October 6, 1993. The Government informed the court that it sought admission of Exhibit 5 for the purpose of demonstrating that Jackson's appearance had changed since the time of the drug transactions; this would explain why Detective Wallace had trouble identifying Jackson as Louie in court. Jackson objected, asserting that the photograph, which no witness connected to any criminal act, lacked relevance and, in the alternative, unduly prejudiced him. The court rejected this argument and admitted the photograph.

It is unclear whether Jackson continues to maintain on appeal that the photograph unfairly prejudiced him. In any event, we can discern no unfair prejudice; nothing about the photograph indicates that it is a mug shot.

As to relevance, Jackson stipulated that Exhibit 5 depicted him. True, no witness testified that Exhibit 5 closely resembled Jackson's appearance at the time of the drug transactions and the district court, upon examination of Exhibit 5, commented that it more closely resembled Jackson's appearance at trial than the 1980 photograph. However, these facts go to the weight of the evidence not its admissibility or relevance. The prosecution maintained that examination of Exhibit 5 demonstrated that Jackson's appearance had changed between the time of the crack sales and the day of trial; this evidence was significant because Detective Wallace had testified that he could not be sure that the person from whom he purchased cocaine was Jackson. Clearly, a photograph taken of Jackson near the time of the drug transactions was, therefore, relevant.

7

B.

During the Government's rebuttal argument, the prosecutor referred to Exhibit 5 for the first time:

> When you look at another photograph that we have put into evidence, Government Exhibit 5. This is the photograph of the defendant taken in 1993. You decide. You can see how his appearance has changed today.

Without specifically referencing either Exhibit 3 or Exhibit 5, the prosecutor later stated, "[t]here is no doubt that the Wallace ID -- that Detective Wallace identified the defendant through the photograph." At the close of all evidence, Jackson moved for a mistrial. Before the jury began to deliberate, he requested that Exhibit 5 be withheld from the jury's consideration; the court refused to do this.

Jackson contends that the prosecutor's reference to Exhibit 5 constituted prosecutorial misconduct. A two-prong test determines whether a prosecutor's remarks rise to the level of prosecutorial misconduct: (1) the prosecutor's remarks or conduct must have been improper, and (2) such remarks must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. United States v. Chorman, 910 F.2d 102, 113 (4th Cir. 1990). Even if we assume that Jackson is able to satisfy the first prong -- that the prosecutor's remarks were improper -- the comments were not sufficiently prejudicial so as to deny Jackson a fair trial.

Factors relevant to the issue of prejudice are: (1) the degree to which the remarks tend to mislead the jury; (2) whether the remarks were isolated or extensive; (3) the strength of the evidence supporting guilt in the absence of the remarks; (4) whether the remarks were deliberately placed in front of the jury to divert attention to extraneous matters; (5) whether the prosecutor's remarks were invited by improper conduct of defense counsel; and (6) whether curative instructions were given to the jury. See United States v. Young, 470 U.S. 1, 12 (1985); United States v. Harrison, 716 F.2d 1050, 1053 (4th Cir. 1983). The issue of "[w]hether improper argument by government counsel has so prejudiced the trial process as to require

8

reversal must be gauged from the facts of each trial." <u>Young</u>, 470 U.S. at 1051.

Whether the prosecutor's remarks misled the jury is not clear, but it is clear that they were isolated. Moreover, no evidence indicates that the Government deliberately confused the jury. Rather, the prosecution used the 1993 photo in precisely the manner it had previously informed the court it intended to. Furthermore, the Government produced ample evidence to convict Jackson without the assertedly improper remarks. Along with Detective Wallace's testimony, the 1980 photograph, and the tape recording of a telephone conversation concerning drug sales with Louie, whose voice was identified as Jackson's, the prosecution also offered evidence that connected Jackson to a pager and telephone numbers used in those drug sales.*

VII.

For all of these reasons, the convictions and sentences are

<u>AFFIRMED</u>.

_____

*In view of this evidence, the district court clearly did not err in denying Jackson's motion for acquittal.

9