SANTURRI, THOMAS R., Associate Judge.
The State appeals the trial court’s order granting Appellee’s (Defendant below) Second Amended Motion to Dismiss based upon pre-arrest delay, resulting in a due process violation. The State argues that a due process violation based upon pre-ar-rest delay requires finding substantial prejudice to an accused’s right to a fair trial and finding that the delay was an intentional device used to gain a tactical advantage over the accused. We disagree and affirm.
I. Facts
On October 14, 2010, Defendant was charged by information with sale of a controlled substance, in response to a sworn complaint made June 7, 2010. The State alleged in the information that the crime occurred on November 20, 2007, almost three years before the information was filed. The trial court granted the Defendant’s Second Amended Motion to Dismiss on August 28, 2011, finding a due process violation as a result of pre-arrest delay. In reaching its decision to grant the Defendant’s Second Amended Motion to Dismiss, the trial court cumulatively considered evidence and testimony presented at four separate hearings.
The Defendant was charged with selling cocaine on November 20, 2007 to undercover officers with his half-brother and co-defendant, Merrell Hudson. To demonstrate actual prejudice caused by the pre-arrest delay, the defense presented testimony from the Defendant, Hudson, and Brooke Williams, Defendant’s former girlfriend. The Defendant testified he was not with Hudson on the date of the alleged drug buy. He saw the video from the undercover buy and testified that the picture showing a portion of someone’s head was not him. He believed he was with Williams, his girlfriend at the time, as he would have picked her up from college for the Thanksgiving break.
Williams testified that she attended Bethune-Cookman College in Daytona in 2007. She testified that she would have been in Gainesville for Thanksgiving (November 22, 2007), but she did not remember if she left school early. According to Williams, there was a strong possibility she was in Gainesville on November 20, 2007 due to early dismissal from school, but she was not certain due to the passage *1135 of time. Williams did not have a 2007 school calendar to indicate the dates of the Thanksgiving break that year.
Hudson testified that he made a plea deal, which required him to testify truthfully in all matters in relation to the drug buy. Hudson testified that he was not with the Defendant on the day in question, but that he was with K.B., his ex-girlfriend’s brother. Hudson did not know KB.’s last name and, due to the lapse in time, did not know how to locate or contact his ex-girlfriend or K.B.
The State called three witnesses, Corporal Alade, Sergeant Hood, and Sergeant O’Quinn, to testify to the reasons for the pre-arrest delay. Corporal Alade, of the Gainesville Police Department, testified that he was involved with three undercover drug buys from Hudson in 2007 and 2008, including the November 20, 2007 drug buy at issue. During the investigation, he learned that the cases might be federally prosecuted. Corporal Alade was not explicitly prohibited from discussing the cases with the State Attorney’s Office, but he testified that common protocol was to not discuss cases when a federal prosecution might proceed. Alade was not aware of when the federal investigation ceased.
Sergeant Hood, of the Alachua County Sheriffs Office, was the case agent on Hudson’s cases. He testified that he was required to sign a document which prevented him from talking about the cases. Sergeant Hood did not recall whether the document prohibited him from discussing the Hudson cases with the State Attorney’s Office. Hood testified that at the time he left Narcotics on December 21, 2008, the federal government was still investigating the cases and, around the summer of 2009, the federal government decided not to indict Hudson and the Defendant. He did not know why the case was not sent to the State Attorney’s Office when the federal government decided not to prosecute.
Sergeant O’Quinn, with the Gainesville Alachua County Drug Task Force, testified about the delay in sending the case to the State Attorney’s Office. She started working for the drug task force in March 2009, but she only became aware of this case when given a print-out of open cases around June 7, 2010. She sent this case to the State Attorney’s Office after discovering it in the print-out.
The trial court found actual prejudice based on the testimony of Williams and Hudson. Weighing the actual prejudice against the State’s reasons for the delay, the court found that the State failed to meet its burden in showing the reasons for the delay outweighed the actual prejudice.
II. Analysis
A. Standard of Review
We review a trial court’s dismissal based on pre-arrest delay for an abüse of discretion. See United States v. Vickers, 333 F. App’x 458, 459 (11th Cir.2009) (citing United States v. Foxman, 87 F.3d 1220, 1222 (11th Cir.1996)). “If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.” Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980) (quoting Delno v. Mkt. St. Ry. Co., 124 F.2d 965, 967 (9th Cir.1942)). We, however, apply the de novo standard to the trial court’s interpretation of the due process test for pre-arrest delay, as this test involves a pure question of law. See S. Baptist Hosp. of Fla., Inc. v. Welker, 908 So.2d 317, 319 (Fla.2005).
B. The Test for Due Process Violation based upon Pre-Arrest Delay
The statute of limitations is “the primary guarantee against bringing overly *1136 stale criminal charges.” United States v. Marion, 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) (quoting United States v. Ewell, 383 U.S. 116, 122, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966)). The statute of limitations, however, does not fully define a defendant’s rights regarding pre-indictment delay, and the due process clause plays a role in protecting against delay. Id. at 324, 92 S.Ct. 455; United States v. Lovasco, 431 U.S. 783, 789, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).
Marion and Lovasco are the leading United States Supreme Court cases on due process violations caused by pre-indictment delay. In Marion, the Court acknowledged the government’s concession that due process “require[s] dismissal of the indictment if ... the pre-indictment delay ... caused substantial prejudice to appellees’ rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused.” 404 U.S. at 324, 92 S.Ct. 455. The Court, however, did not address whether unintentional delay could constitute a due process violation. In Lovasco, the Court further clarified the test for a due process violation in this context, asserting that “proof of actual prejudice makes a due process claim concrete and ripe for adjudication, [but] not ... automatically valid[,]” meaning “proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused.” 431 U.S. at 789-90.
The Marion and Lovasco opinions have led to debate about the proper test for pre-indictment or pre-arrest delay. The test in Florida for determining whether pre-arrest delay rises to a due process violation was enunciated in Howell v. State:
[I]n evaluating an asserted due process violation based on pre-indictment delay, Lovasco and Marion require us “to consider both the reasons for the delay and the prejudice to the accused.” ... Further, the accused bears the burden of proving the prejudice and, if the threshold requirement of proof of actual prejudice is not met, the inquiry ends there.... Once actual prejudice is shown, it is necessary to engage “in a sensitive balancing of the government’s need for an investigative delay ... against the prejudice asserted by the defendant.” ... The inquiry turns on “whether the prosecution’s actions violated ‘fundamental conceptions of justice’ or the community’s sense of fair play and decency.” ... “Inherent in the adoption of a balancing process is the notion that particular reasons are to be weighed against the particular prejudice suffered on a case-by-case basis.”
418 So.2d 1164, 1170 (Fla. 1st DCA 1982) (quoting United States v. Townley, 665 F.2d 579, 581-82 (5th Cir.1982)). This test was adopted by the Florida Supreme Court in Rogers v. State, 511 So.2d 526, 531 (Fla.1987). The State contends that Townley, the basis for Howell, is no longer good law, and that we should adopt the Crouch test, which overruled the Townley test. See United States v. Crouch, 84 F.3d 1497 (5th Cir.1996) (en banc). According to Crouch,
for preindictment delay to violate the due process clause it must not only cause the accused substantial, actual prejudice, but the delay must also have been intentionally undertaken by the government for the purpose of gaining some tactical advantage over the accused in the contemplated prosecution or for some other impermissible, bad faith purpose.
Id. at 1514. Although we recognize the Fifth Circuit went en banc in Crouch and overruled Townley, this Court is bound by Howell and Rogers. We also note that two *1137 years after Crouch, and as recently as 2007, the Florida Supreme Court has applied the test used in Howell and adopted in Rogers. See Overton v. State, 976 So.2d 586 (Fla.2007); Rivera v. State, 717 So.2d 477 (Fla.1998).
1. Actual Prejudice
A defendant has the initial burden of showing actual prejudice. Rogers, 511 So.2d at 531. “The prejudice must amount to ‘a material impairment of his capacity to prepare a defense.’ ” State v. Ingram, 736 So.2d 1215, 1216 (Fla. 5th DCA 1999) (quoting State v. Wright, 545 So.2d 360, 361 (Fla. 5th DCA 1989)). “Speculative or general allegations of prejudice, such as a disappearance of alibi witnesses or failure of memory are insufficient.” Wright, 545 So.2d at 361 (citing Rogers, 511 So.2d 526).
In this case, the trial court found actual prejudice was demonstrated through Williams’ and Hudson’s testimony. Under the specific facts of this ease, we do not believe the trial court abused its discretion in finding actual prejudice supported by articulable reasons, rather than just fuzzy memory. Williams believed there was a strong possibility she was with the Defendant on the date in question, but could not prove it due to the passage of time. While a calendar may have provided the date on which Bethune-Cookman dismissed students for the Thanksgiving break in 2007, the trial court determined that Williams’ testimony reflected that she might have left early for Thanksgiving. We cannot say the trial court’s interpretation of Williams’ testimony is unreasonable.
Further, Hudson’s testimony reflects prejudice based on more than faded memory or speculative allegations. Hudson, who was required to testify truthfully according to the terms of his plea deal, said he knew who was with him and that it was not the Defendant, but due to the passage of time, he did not know how to contact or locate this person. This caused prejudice to the Defendant by preventing him from corroborating Hudson’s testimony. Corroboration would be particularly important at trial, as the State admitted it would attack Hudson’s credibility through bias and other impeachment methods. We find that the trial court, under these specific facts, did not abuse its discretion in finding that the combination of the prejudice elicited from the testimony of Williams and Hudson would materially impair the Defendant’s ability to prepare a defense.
2. Balancing Test
Since we cannot say the trial court abused its discretion in finding actual prejudice, we must review the trial court’s balancing of the State’s reasons for the delay against the actual prejudice. “The outcome turns on whether the delay violates the fundamental conception of justice, decency and fair play embodied in the Bill of Rights and fourteenth amendment.” Rogers, 511 So.2d at 531. The State has the burden of showing why the delay was necessary. Howell, 418 So.2d at 1170.
The delay from the date of the alleged incident, November 20, 2007, to the filing of the information on October 14, 2010, was almost three years. The trial court concluded that the first half of the delay was legitimate investigative delay and the second half was negligent delay. In balancing the reasons for the delay against the prejudice, we cannot say the trial court abused its discretion.
Accordingly, we AFFIRM the trial court’s order granting Defendant’s Second Amended Motion to Dismiss.
BENTON, C.J., and SWANSON, J., concur.