PER CURIAM.
Louis B. Niles appeals his conviction and sentence, entered following his guilty plea to one count of lewd or lascivious molesta *661 tion. He argues that the trial court erred in denying his motions to dismiss the charges against him on the grounds that the delay of more than eight years between the issuance of the capias and his arrest violated his Sixth Amendment right to a speedy trial. Pursuant to the dictates of Doggett v. United States, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), and Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 83 L.Ed.2d 101 (1972), we agree and reverse.

I. Background

On March 6, 2000, the State filed an information charging Niles with two counts of lewd or lascivious molestation in violation of section 800.04(5)(b), Florida Statutes, for conduct allegedly occurring between January 15 and 18, 2000, in Nassau County. The alleged victims were K.M. (Count One) and M.M. (Count Two). A capias was issued on March 6, 2000 for Niles’ arrest. He was ultimately arrested on the capias on August 11, 2008, more than eight years after the charges were filed against him.
The relevant facts forming the basis of the charges and the context for our “speedy trial” analysis are as follows. While on an extended tour of the United States in his camper van, Niles visited the victims’ family in January 2000. Niles and the victims’ father became acquainted in connection with their military service and the father’s subsequent legal services on Niles’ behalf in a case unrelated to the instant case. During Niles’ visit, KM. and M.M. told their parents that Niles had inappropriately touched them with a vibrator while they were playing in Niles’ camper van. The parents confronted Niles, who denied any wrongdoing. The mother removed the children from the home, and the father demanded that Niles leave and not return.
A few days later, the parents discussed the incident with a counselor. The counselor alerted the Nassau County Sheriffs Office, which commenced an investigation as early as January 19, 2000, and during the ensuing weeks. The investigating officer, Detective Hemphill, spoke to the victims and their parents at the end of January 2000 and prepared handwritten notes as well as an investigative summary. At the time the incident was reported, the parents knew Niles’ residence address, phone number, and that he was a retired military officer receiving monthly retirement benefits from the United States Army. The sheriffs office received information from the parents regarding Niles’ background, including his social security number, and the likelihood that he would return in his camper van to California, where Niles’ previous attorney, Michael Rainey, lived. The father of the victims, who had also been previously represented by Rainey, had contact information for Rainey.
Aside from attempting to contact the family again by telephone shortly after questioning them, there is no evidence that the detective pursued the investigation further. According to the investigative report, he deemed the case closed after the capias issued, pending Niles’ arrest. Detective Hemphill left his employment with the Nassau County Sheriffs Office in 2001.
Approximately six months after the incident, attorney Rainey contacted the victims’ father, who traveled to California and met with Rainey. During that trip, the father met with Niles in San Diego for a breakfast that the father described as “civil.” There is no evidence that the father and Niles addressed or discussed the capi-as. Nor is there any evidence that the father even knew the capias had been issued at that time.
*662 The stipulated facts reflect that Niles acquired a Broward County, Florida residence in 2004 and a valid Florida driver’s license in August 2006. He paid property taxes in Broward County and established his homestead there. Niles had a valid United States passport, which he used to travel abroad and return to the United States multiple times between 2000 and 2008. At no time when Niles re-entered the United States through Immigration and Customs was he notified of the existence of an outstanding capias, other than on the date he was arrested.
Authorities ultimately apprehended Niles as he crossed the border from Mexico into the United States. Immediately prior to his arrest, the Nassau County Sheriffs Office had entered the outstanding warrant into a national crime information computer database. There is no evidence that the State undertook any efforts to locate Niles between the closing of Detective Hemphill’s investigation in 2000 and the entry of the warrant into the national database in 2008.

II. Procedural History

After Niles’ arrest in August 2008, the State filed an amended information real-leging Counts One and Two and adding two counts of sexual battery against the same victims. In December 2008, Niles moved to dismiss the information and requested a discharge, citing the delay of more than eight years between the issuance of the capias and his arrest. In pertinent part, the motion to dismiss asserted that the prosecution of Niles was time-barred pursuant to the analyses of the constitutional right to a speedy trial in Doggett v. United States, 505 U.S. at 647, 112 S.Ct. at 2686 and Barker v. Wingo, 407 U.S. at 514, 92 S.Ct. at 2182. The motion alleged that certain records and notes compiled during the investigation are no longer available. The State filed a response opposing the motion.
At the beginning of the motion hearing on January 15, 2009, the prosecutor announced that the State did not dispute the facts alleged in the motion to dismiss. The State argued that Niles had not satisfied the four factors in Doggett that would entitle him to relief. The court issued a written order denying the motion to dismiss, without any findings of fact or legal explanation. In Case No. 1D09-844, Niles filed a petition for writ of prohibition in this Court, which denied relief without an opinion. Niles v. State, 7 So.3d 539 (Fla. 1st DCA 2009).
Niles moved in the trial court for reconsideration of the order denying the motion to dismiss. Again, defense counsel asserted that Niles is entitled to relief under Doggett. The State filed a response seeking to have the motion for reconsideration stricken as untimely filed or denied on the merits. The trial court conducted a hearing and issued a written order denying the motion, with no findings of fact or explanation. The State filed a third amended information charging two counts of lewd or lascivious molestation and two counts of sexual battery involving the same two victims. After considering Niles’ challenge to the third amended information, the trial court denied relief.
Niles entered a guilty plea to one count of lewd or lascivious molestation and was sentenced to eight years’ incarceration and three years’ sex offender probation. In exchange, the State agreed to nolle pros the remaining counts. Having expressly reserved the right to appeal the dispositive issue raised in the motion to dismiss, Niles argues on appeal that the delay of more than eight years between the issuance of the capias and his arrest violated his constitutional right to a speedy trial pursuant to the tests in Doggett and Barker.

*663
III. Res Judicata

As an initial matter, the State contends that under the doctrine of res judicata, Niles is not entitled to relief in this appeal because this Court denied his petition for writ of prohibition after the trial court first denied the motion to dismiss. “Res judicata bars consideration of an issue in a subsequent proceeding where the issue was raised and denied on the merits in a prior extraordinary writ proceeding.” Rice v. State, 90 So.3d 929, 930 (Fla. 1st DCA 2012). The State assumes that, in denying the writ, this Court must have ruled on the merits. Our decision merely stated that the petition was “denied,” without any further elaboration. Niles, 7 So.3d at 539. The record does not support the State’s position because, without more information than is provided in the denial order, “in this State, unelaborat-ed denials in extraordinary writ eases shall not be deemed denials on the merits.” Topps v. State, 865 So.2d 1253, 1258 (Fla.2004). Therefore, we look to the merits of Niles’ Sixth Amendment claim.

IV. Sixth Amendment

The Sixth Amendment to the United States Constitution guarantees that “[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial.”[1] The right to a speedy trial attaches “at the time of arrest or indictment, whichever comes first, and it continues until the date of trial.”[2] Howell v. State, 418 So.2d 1164, 1167 (Fla. 1st DCA 1982) (citing United States v. Gonzalez, 671 F.2d 441, 444 (11th Cir.1982)). Unlike other procedural rights, it is “impossible to determine with precision when the right has been denied,” as it cannot be said definitely “how long is too long in a system where justice is supposed to be swift but deliberate.” Barker, 407 U.S. at 521, 92 S.Ct. 2182.
Because of the amorphous quality of this right, “any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case.” Id. at 522. The United States Supreme Court in Barker established a balancing test to guide this analysis, which weighs the conduct of both the State and the defendant. It involves the consideration of four factors: (1) the “length of the delay,” (2) the “reason for the delay,” (3) the “defendant’s assertion of his right,” and (4) the “prejudice to the defendant.” Id. at 530. None of these four factors, standing alone, is “either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant.” Id. at 533.
Generally, the determination of whether a defendant’s constitutional right to a speedy trial has been violated presents a mixed question of law and fact. United States v. Villarreal, 613 F.3d 1344, 1349 (11th Cir.2010); United States v. Ingram, 446 F.3d 1332, 1336 (11th Cir.2006). Ordinarily, we would defer to the trial court’s factual findings that are supported by competent, substantial evidence, while reviewing the court’s ultimate legal conclusions de novo. Morel v. Wilkins, 84 So.3d 226, 231 (Fla.2012). However, because the trial court’s ruling denying Niles’ motions to dismiss contained no findings of fact or conclusions of law, our review is de novo. *664 See United States v. Molina-Solorio, 577 F.3d 300, 304 (5th Cir.2009) (stating that the appellate court has de novo review of the trial court’s application of the Barker factors); United Health Care of Fla., Inc. v. Brown, 984 So.2d 583, 585 (Fla. 4th DCA 2008). We therefore undertake the analysis required by Barker, applying each of the four factors to the facts available in the record.

A. Length of Delay

The first Barker factor, the length of the delay, “is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.” 407 U.S. at 531, 92 S.Ct. 2182; see Doggett, 505 U.S. at 651-52, 112 S.Ct. 2686. The first Barker factor is also considered a “double enquiry.” Once the interval between accusation and trial has crossed the threshold to become “presumptively prejudicial,” the court must then consider, in part, the extent to which the delay has extended beyond the “bare minimum needed to trigger judicial examination of the claim.” Doggett, 505 U.S. at 651-52, 112 S.Ct. 2686. “The longer the pretrial delay extended beyond the ‘bare minimum’ necessary to show presumptive prejudice, the stronger the presumption that the pretrial delay prejudiced the defendant.” Villarreal, 613 F.3d at 1350.
In the present case, the State properly concedes that the delay of more than eight years between the issuance of the capias and Niles’ arrest triggers the analysis of the remaining Barker factors. See Doggett, 505 U.S. at 651-52, 112 S.Ct. 2686 (concluding that a six-year delay attributable to the government was presumptively prejudicial); Ingram, 446 F.3d at 1336-37 (finding that a two-year delay between the indictment and the trial required the court to proceed with the full Barker test, and noting that delays exceeding one year are generally deemed presumptively prejudicial); Madonia v. State, 648 So.2d 260, 261 (Fla. 5th DCA 1994) (holding that a three-year delay was presumptively prejudicial, triggered a Doggett inquiry, and violated the right to a speedy trial). Moreover, we conclude that this factor weighs heavily against the State because of the extraordinary length of the delay. United States v. Bergfeld, 280 F.3d 486, 489 (5th Cir.2002); Molina-Solorio, 577 F.3d at 305.

B. Reasons for Delay

The second Barker factor involves the reason the government assigns to justify the delay. 407 U.S. at 531, 92 S.Ct. 2182. “Because the prosecutor and the court have an affirmative constitutional obligation to try the defendant in a timely manner ... the burden is on the prosecution to explain the cause of the pretrial delay.” Digram, 446 F.3d at 1337 (internal citation omitted).
Courts will accord different weights to different reasons for the delay. For instance, if the government deliberately tries to impede the defense, this factor will weigh heavily against the government, whereas negligence on the government’s part “should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.” Barker, 407 U.S. at 531, 92 S.Ct. 2182. The weight assigned to official negligence “compounds over time as the presumption of evidentia-ry prejudice grows.” Doggett 505 U.S. at 647, 112 S.Ct. 2686. When there is a valid reason for the delay, such as when a defendant intentionally evades detection, such a delay is justified. See Ingram, 446 F.3d at 1337 (“[A] defendant who intentionally evades the Government’s efforts to bring *665 him to trial is culpable in causing the delay.”). The determination of which side is responsible or at “fault” for the delay also affects the analysis of the fourth Barker factor, relating to the burden of proving prejudice to defendant as a result of the delay.
According to the stipulated facts in this case, the 2000 capias was not entered into a national database to aid in capturing Niles until immediately prior to his 2008 arrest. For this reason, the State correctly concedes that its own negligence contributed to the delay, and that this second Barker factor weighs against the State.
Attempting to mitigate the effects of its failure to investigate, the State argues that the trial court could have inferred from evidence in the record that Niles engaged in evasive tactics to avoid prosecution. To support this theory, the State relies on jail telephone calls between Niles and unidentified individuals, the recordings of which were entered into evidence during the hearing on Niles’ motion to dismiss. In one such call, Niles discussed using a Florida address to avoid paying taxes in California and that he did this “forever.” That Niles may have been evading taxes is not the same as his evading the capias, where the State presented no direct evidence that Niles even knew about the capias until the time of his arrest. To the extent the State suggests that it would have been unable to find Niles even if authorities had tried, this argument is based on pure speculation, as there is no evidence that law enforcement took any steps at all to find Niles during this eight-year interim.
In another jail telephone call, Niles discussed a civil lawsuit and commented: “They still want to depo me, but Mike [Rainey] is — Mike [Rainey] is hiding me right now without letting them know.” When the trial court asked attorney Rai-ney about this comment during the hearing, Rainey explained that Niles was referring to Rainey’s legal efforts, after the arrest in the instant case, not to disclose to certain’ parties (in an unrelated civil lawsuit) that Niles was currently in the Nassau County Jail. No evidence was introduced at the hearing that Rainey was trying to hide Niles prior to his arrest. Where the authorities took no timely steps to try to locate Niles or apprise him of the pending capias, Niles had nothing to evade and no reason to hide.
The objective evidence in this case overwhelmingly leads to the conclusion that the March 2000 capias lay dormant for more than eight years; and that the authorities undertook no investigation whatsoever after interviewing the victims and their parents, despite having specific information that, if investigated, would have led law enforcement to Niles much sooner than 2008. Law enforcement knew of Niles’ social security number, his date of birth, his California connection, and his past military service in the U.S. Army. He purchased a residence in Broward County in 2004 and obtained a Florida driver’s license in 2006. He paid property taxes in Broward County and established a homestead there. Niles traveled to other countries and back to the United States on at least five different occasions, passing through Department of Homeland Security stations without detection.
The absence of any official attempt to locate Niles presented no opportunity or reason for him to evade detection. As soon as the authorities placed the capias into a national database, they found and arrested Niles. Without sufficient evidence that Niles contributed to the unreasonable delay, this second factor weighs heavily against the State. United States v. Mitchell, 146 F.3d at 1339 (11th Cir.1998).

*666
C. Assertion of Right

The third Barker factor is the defendant’s assertion of the right to a speedy trial. 407 U.S. at 530-32, 92 S.Ct. 2182. “[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.” Id. at 532. The State argues that Niles failed to timely assert his constitutional right to a speedy trial. But the State did not present credible evidence that Niles knew about the pending capias until his arrest in 2008. His numerous actions, which established easily traceable ties to Florida and California, as well as his frequent travels abroad and back, are entirely consistent with the conclusion that Niles was unaware of the capias and was not trying to hide from law enforcement. Thus, Niles could not have asserted his right to a speedy trial prior to his arrest. See Doggett, 505 U.S. at 653-54, 112 S.Ct. 2686 (finding that the defendant is “not to be taxed for invoking his speedy trial right only after his arrest,” if he is unaware that he was under indictment or that “the police had come looking for him”). At his arraignment and in his motion to dismiss, Niles asserted the denial of his constitutional right to a speedy trial. This meets the requirements of Barker. See Seymour v. State, 738 So.2d 984, 986 (Fla. 2d DCA 1999); Howell, 418 So.2d at 1173.

D. Prejudice to Defendant

The fourth Barker factor is prejudice to the defendant. 407 U.S. at 532, 92 S.Ct. 2182. Courts should assess this factor “in the light of the interests of defendants which the speedy trial right was designed to protect.” Id. The Court in Barker identified three interests: “(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.” Id. (citation omitted). Of these three interests, the most serious is the last one, “because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.” Id.; Doggett, 505 U.S. at 654, 112 S.Ct. 2686.
Ordinarily, a defendant must show actual prejudice under the fourth Barker factor; however, where the first three factors weigh heavily against the State, prejudice is presumed. Ingram, 446 F.3d at 1336 (citing Doggett). As the Court in Doggett explained:
[ A]ffirmative proof of particularized prejudice is not essential to every speedy trial claim. Barker explicitly recognized that impairment of one’s defense is the most difficult form of speedy trial prejudice to prove because time’s erosion of exculpatory evidence and testimony “can rarely be shown.” And though time can tilt the case against either side, one cannot generally be sure which of them it has prejudiced more severely. Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay.
505 U.S. at 655-56, 112 S.Ct. 2686 (internal citations omitted).
In the case before us, Niles was not incarcerated during the delay of more than eight years, nor does the record indicate that he had anxiety or concern, given his apparent unawareness of the capias. Therefore, the only applicable purpose of the constitutional speedy trial rule, as applied to the fourth Barker factor, is the *667 possibility that the lengthy delay impaired Niles’ ability to prepare his defense.
The State argued in the trial court, as it does on appeal, that on this record, Niles has to show actual prejudice because the first three Barker factors do not weigh heavily against the State. We disagree, as no view of the evidence supports the State’s conclusion regarding the weight of these three factors, and its assertion that Niles contributed to the delay. Because the first three factors weigh heavily against the State, as they did against the government in Doggett, Niles is not required to show actual prejudice.[3] Ingram, 446 F.3d at 1340; United States v. Dennard, 722 F.2d 1510, 1513 (11th Cir.1984); United States v. Avalos, 541 F.2d 1100, 1116 (5th Cir.1976). Instead, the prejudice to Niles is presumed. Doggett, 505 U.S. at 654-58, 112 S.Ct. 2686.
The State acknowledges in this appeal that the presumption of prejudice from a lengthy delay (not attributable to any attempt to evade justice by the defendant) shifts the burden to the government to rebut the presumption. This requires the State to affirmatively prove that the delay did not impair the defendant’s ability to prepare a defense. Doggett, 505 U.S. at 658 n. 4, 112 S.Ct. 2686; United States v. Battis, 589 F.3d 673, 682 (3d Cir.2009). In this case, the State argues that the passage of more than eight years severely damaged the State’s case due to the younger victim’s and the lead detective’s lack of independent recollection. This may be true. But the State fails to establish that the lengthy delay did not impair Niles’ ability to prepare a defense. On this record, we conclude that the State did not meet its burden to persuasively rebut the presumption of prejudice.
According to the well-established framework for analyzing speedy trial claims established by Barker and Doggett, the trial court erred as a matter of law in denying the motion to dismiss the information. We must therefore reverse the judgment and sentence.
REVERSED.
VAN NORTWICK, MARSTILLER, and RAY, JJ., concur.

. The Sixth Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment. Barker, 407 U.S. at 515, 92 S.Ct. 2182.

. In the instant case, Niles has put at issue the period between the issuance of the capias and the date of his arrest as violating his speedy trial right.

. To be clear, had the State pursued Niles with "reasonable diligence,” his speedy trial claim would have failed, regardless of the length of the delay, if Niles could not show specific prejudice to his defense. See Doggett, 505 U.S. at 656, 112 S.Ct. 2686.