IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

WILLIE CROCKETT,

      Appellant,

v.

STATE OF FLORIDA,

      Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-1745

Opinion filed September 6, 2016.

An appeal from the Circuit Court for Alachua County.
David P. Kreider, Judge.

Nancy A. Daniels, Public Defender, and Victor Holder, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Michael Schaub, Assistant Attorney General, Tallahassee, for Appellee.

WOLF, J.

Appellant raises a number of issues on appeal. We find one issue is dispositive and requires reversal. Appellant asserts the State violated his constitutional right to a speedy trial when it prosecuted him over eight years after it

filed the information against him. Based on the unique facts of this case, we agree and reverse.

## I. Facts

The State filed a nine-count information against appellant on August 1, 2005, alleging charges that included burglary while armed with a firearm and home invasion robbery in Alachua County, Florida. Appellant, who had been on parole in Georgia, was arrested in Georgia on August 10, 2005, for violating his parole by committing these new law violations in Florida as well as new law violations in Georgia and technical parole violations. His parole officer saw him the next day and orally advised him of all of the various charges against him; however, she did not serve him with any paperwork.

Appellant pled guilty to the technical violations of his parole and was re-sentenced to incarceration in Georgia. Appellant remained incarcerated in Georgia until his sentence expired nearly eight years later on June 14, 2013, at which point the State served an arrest warrant on appellant for his Alachua County charges. It is unclear whether the State ever entered a detainer for appellant; there is no detainer in the record.

Six months after his 2013 arrest in Florida, appellant filed a motion alleging the delay in prosecution violated his constitutional right to a speedy trial. Nearly a year passed before the evidentiary hearing on the motion was heard.

During the evidentiary hearing, the State alleged appellant should have requested a speedy trial in Florida while he was incarcerated in Georgia. Counsel for appellant contended that though appellant was informed by his Georgia parole officer about the Florida charges against him, he was never formally served with any documentation such as the information or evidence that a detainer had been lodged against him. Without proof that appellant had been advised of a detainer against him, defense counsel claimed appellant could not have been expected to follow the guidelines of requesting his own extradition pursuant to the Interstate Agreement on Detainers Act.

This claim was corroborated by the testimony of appellant's Georgia parole officer, who stated that she orally informed appellant of the Florida charges against him but did not provide him with paperwork and did not advise him of the steps he should take to resolve the Florida charges against him because she was not familiar with the Florida justice system.

During the hearing, appellant alleged the delay in his prosecution had prejudiced him; he presented evidence that both an alibi witness and an eyewitness to the alleged crime who had stated appellant was not the perpetrator could no longer be found. It was also established that all of the physical evidence in the case had been destroyed because of the State's negligence, including evidence from which DNA might have been obtained. The trial court denied appellant's

motion to dismiss; it found the delay in prosecution was caused by a negligent lack of diligence by the State, but also found the State's lack of diligence did not impair appellant's ability to present his defense, as appellant could still present his familial alibi witnesses.

On April 15, 2015, appellant pled nolo contendre to home invasion robbery with a firearm and was sentenced to five years' imprisonment, but he reserved his right to appeal the denial of his motion to dismiss.

## II. Analysis

Appellant claims his Sixth Amendment right to a speedy trial was violated when the State prosecuted him eight years after filing the information against him. The Sixth Amendment guarantees defendants the right to a speedy and public trial; however, "[u]nlike other procedural rights, it is 'impossible to determine with precision when the right [to speedy trial] has been denied,' as it cannot be said definitely 'how long is too long in a system where justice is supposed to be swift but deliberate.'" Niles v. State, 120 So. 3d 658, 663 (Fla. 1st DCA 2013) (quoting Barker v. Wingo, 407 U.S. 514, 521 (1972)).

Based on the amorphous nature of the inquiry, to determine whether a defendant's constitutional speedy trial right has been violated, a court must look to the totality of the circumstances on a case-by-case basis. Howell v. State, 418 So. 2d 1164, 1171 (Fla. 1st DCA 1982). The United States Supreme Court has

delineated four factors to guide the determination of whether the constitutional speedy trial right was violated: "(1) the length of the delay, *e.g.*, whether the delay is presumptively prejudicial; (2) the reason for delay; (3) whether the appellant has timely asserted his rights; and (4) the existence of actual prejudice as a result of the delay." Id. (citing Barker, 407 U.S. at 530-33). "The test is one in which each factor is balanced against the others." Id.

The trial court found appellant's constitutional speedy trial right had not been violated, although the length of the delay – eight years – was presumptively prejudicial, because (1) the delay was not intentional, but rather, negligent; (2) appellant failed to timely assert his right to a speedy trial; and (3) appellant was not prejudiced by the delay.

"Generally, the determination of whether a defendant's constitutional right to a speedy trial has been violated presents a mixed question of law and fact." Niles, 120 So. 3d at 663. We review the trial court's factual findings under the competent substantial evidence standard of review and its legal conclusions de novo. Id. Under the unique circumstances of this case, we hold the State violated appellant's constitutional speedy trial right and reverse the trial court's denial of appellant's motion to dismiss. In coming to this conclusion, we consider each of the four factors presented in Barker. We outline those factors below.

## A. Length of Delay

The State conceded that the eight-year delay between the filing of appellant's information and his continued prosecution was substantial and presumptively prejudicial. Thus, this factor should weigh against the State.

## B. Reason for Delay

The trial court found the State's negligence was the reason for the delay in prosecution, but did not weigh this factor heavily against the State in part because the trial court also found appellant failed to timely assert his right to a speedy trial and thereby contributed to the State's continued delay in prosecuting him. The trial court did not explicitly note how the State was negligent; however, the only negligent act by the State was its failure to timely file a detainer against appellant, which would have informed him of his right to have his Florida charges resolved in a timely manner.

The State has a duty to act with due diligence to secure the speedy return of prisoners held in other states. Edmaiston v. Neil, 452 F.2d 494, 498 (6th Cir. 1971); Hoskins v. Wainwright, 440 F.2d 69, 71-72 (5th Cir. 1971). The first step the State must take to secure such a speedy return is to lodge a detainer against the defendant in the state in which the defendant is incarcerated. A detainer "'is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to

6

notify the agency when release of the prisoner is imminent.'" Moore v. State, 137 So. 3d 611, 612 n.1 (Fla. 4th DCA 2014) (quoting Gethers v. State, 838 So. 2d 504, 507 (Fla. 2003)). "Detainers informally put officials on notice that the defendant is wanted in another jurisdiction." Gethers, 838 So. 2d at 507.

Pursuant to the Interstate Agreement on Detainers Act, once a detainer has been lodged against a defendant, the warden or other official having custody of the prisoner "shall promptly inform the prisoner of the source and contents of any detainer lodged against him or her and shall also inform the prisoner of his or her right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based." § 941.45(Art. III)(c), Fla. Stat. (2004). It is through this notice of a detainer that the defendant is informed of his right to request a speedy trial on the pending out-of-state charges.

Here, the State failed to provide evidence that it lodged a detainer against appellant.

During the evidentiary hearing on appellant's motion to dismiss, defense counsel questioned when – and even if – the State had lodged a detainer against appellant while he was incarcerated in Georgia for eight years. At that point, it was the State's burden to prove that it had filed a detainer against appellant in a timely manner. See Howell, 418 So. 2d at 1173 (noting "[t]he burden to account for such [prosecutorial] delay, however, is decidedly upon the prosecution"); Niles, 120 So.

7

3d at 664 ("'Because the prosecutor and the court have an affirmative constitutional obligation to try the defendant in a timely manner . . . the burden is on the prosecution to explain the cause of the pretrial delay.'" (quoting United States v. Ingram, 446 F.3d 1332, 1337 (11th Cir. 2006))).

The State presented no evidence that it ever lodged a detainer against appellant. Though Assistant State Attorney Ralph Grabel testified that the office's policy in 2005 was not to extradite out-of-state defendants, but rather to allow their detainers to remain intact until their out-of-state sentences had expired, Mr. Grabel also testified that he had no specific recollection of appellant's case and made no mention of when, or even if, the office had lodged a detainer against him.

Thus, the record confirms the State failed to meet its burden of proving it had lodged a detainer against appellant. As such, we note this factor should be weighed against the State. Howell, 418 So. 2d at 1172 (noting that although negligence in prosecuting should be "weighed less heavily against the state than an intentional delay," the State should nonetheless "bear the burden of fault"). See also Doggett v. United States, 505 U.S. 647, 657 (1992) (noting that negligence should be "weighed more lightly than a deliberate intent to harm the accused's defense," but also noting that "the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows").

8

## C. Whether Appellant Timely Asserted His Right

The State alleges appellant's failure to assert his constitutional speedy trial right during his eight-year incarceration in Georgia should be weighed heavily against him, and the trial court agreed. It is true appellant did not assert his right to speedy trial while incarcerated in Georgia; however, as noted above, his failure to assert that right was due in part to the State's negligence. Appellant contended he was unable to request a speedy trial through the procedures outlined in the Interstate Agreement on Detainers Act because he had never been informed that a detainer was lodged against him for his Florida charges. We agree that the State failed to meet its burden of proving it had filed a detainer against appellant, which would have then shifted the burden to appellant pursuant to the Act to request a speedy trial.

Typically, "[t]he defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Barker, 407 U.S. at 531-32.

In the current case, appellant did not assert his speedy trial right until eight years after the State filed the information against him and six months after his

9

arrest in Florida. Typically, appellant's failure to assert his speedy trial right would weigh heavily against him.

However, the unique circumstances in this case indicate that although appellant was made aware of the Florida charges against him by his parole officer, he was never served with a copy of the information, nor was he notified that a detainer had been filed against him, and he had the right to request a speedy disposition of his Florida charges even while incarcerated in Georgia. Because the State failed to prove in this case that it took the necessary steps to put appellant on notice of its continued interest in prosecuting, this is a neutral factor.

### D. Whether the Delay Resulted in Actual Prejudice to Appellant

The trial court determined that appellant was not actually prejudiced by the eight-year delay in prosecution in part because he was still able to present many of his alibi witnesses who were his family members. We disagree.

"Perhaps the greatest evil which the Sixth Amendment speedy trial right proposes to counter is the potential for a witness's memory to lapse in regard to material matters as the delay for trial increases." Howell, 418 So. 2d at 1168 (citing Barker, 407 U.S. at 521). Though the constitutional speedy trial right is intended to ensure trial occurs before the defense is impaired by problems resulting from delay such as memory lapse, "impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and

testimony 'can rarely be shown.'" <u>Doggett</u>, 505 U.S. at 655 (quoting <u>Barker</u>, 407 U.S. at 532).

Here, we find appellant proved the necessary prejudice to his defense which resulted from the prosecutorial delay.

Appellant's defense was a defense of misidentification. He claimed that an unrelated acquaintance known to have looked very much like him was the one who committed the crime. To support this theory of defense, appellant wanted to present (1) an alibi witness, the owner of Johnny's Auto, who had been present in Georgia when appellant purchased a car with his family on the date of the burglary; (2) an eyewitness who, when shown a photographic array, stated appellant was *not* the perpetrator; and (3) evidence from the Missouri police department, where appellant's look-alike was arrested for different crimes and had held himself out to be appellant by presenting appellant's identification until a fingerprint analyst realized the look-alike was not appellant.

Appellant alleges that as a result of the prosecutorial delay, both the alibi witness and the eyewitness were now either unavailable or deceased, and the Missouri police department evidence had been destroyed.

The trial court found the unavailability of the witnesses and the destruction of the Missouri police records did not amount to actual prejudice because appellant

11

could still present his alibi defense – that he was purchasing a car at the time of the crimes – through the testimony of familial witnesses. We disagree.

The Supreme Court has held that the death or unavailability of witnesses and the loss of police records is "abundant evidence of actual prejudice." Dickey v. Florida, 398 U.S. 30, 38 (1970). This court has held the same. State v. Hope, 89 So. 3d 1132, 1137 (Fla. 1st DCA 2012).

Here, the testimony of the alibi witness might not have aided appellant in his defense because, as noted by the trial court, the alibi witness might not have testified that he was with appellant on the day the crimes occurred. However, it is indisputable that the testimony of the eyewitness who stated appellant was not the perpetrator and the evidence from the Missouri police department indicating appellant's look-alike had been arrested in Missouri and held himself out to be appellant there would have assisted appellant in proving his misidentification defense. Thus, the loss of the testimony of that eyewitness and the Missouri documentation as a result of the prosecutorial delay prejudiced appellant.

Further, as noted by appellant, in 2009, four years after his information had been filed, but four years before his arrest in Florida, the State destroyed all of the physical evidence from the case. That evidence included the firearm appellant allegedly used to commit the burglary and kidnapping, the jewelry allegedly stolen during the crime, and bed sheets manipulated by the perpetrator to tie up the

12

victims. Though Assistant State Attorney Grabel testified during a hearing on the destruction of evidence that the destruction was inadvertent and the trial court agreed, its destruction prevented appellant from testing any of that evidence for DNA.

In conclusion, after evaluating the four Barker factors, we find the eight-year prosecutorial delay in the current case violated appellant's constitutional right to a speedy trial. First, the length of the delay was presumptively prejudicial. Second, the delay was due to the State's negligence in failing to lodge a detainer against appellant, which would have notified appellant of his right to a speedy trial. Third, appellant's failure to assert his right to a speedy trial while incarcerated in Georgia is a neutral factor, as the State failed to prove appellant was made aware that he had a right to request a speedy trial pursuant to the Interstate Agreement on Detainers Act. Fourth, appellant suffered actual prejudice as a result of the prosecutorial delay. This factor weighs heavily against the State.

As such, we find appellant's constitutional right to a speedy trial was violated based on the specific circumstances present in this case and REVERSE the trial court's denial of his motion to dismiss.

WETHERELL, J., CONCURS; KELSEY, J., DISSENTS WITH OPINION.

KELSEY, J., dissents.

I respectfully dissent because this case turns on weighing the evidence under the four factors of Barker v. Wingo, 407 U.S. 514 (1972), and this weighing process is a core function of a trier of fact that should be left to the trial court's sound discretion, reviewable only for abuse of that discretion. Barker itself, although not expressly setting forth an appellate standard of review, speaks in terms of the wisdom of allowing the trial court discretion to weigh the factors of each case. Id. at 528-29 (noting ad-hoc weighing of each case "allows the trial court to exercise a judicial discretion based on the circumstances"). As a general rule in Florida, appellate courts defer to trial courts on questions of credibility of witnesses, resolving factual disputes, and weighing evidence. E.g., Clegg v. Chipola Aviation, Inc., 458 So. 2d 1186, 1187 (Fla. 1st DCA 1984) ("It is not our function to reweigh the evidence nor to substitute our judgment for that of the trial court.") (quoting Puritz v. Rosen, 442 So. 2d 278, 280 (Fla. 4th DCA 1983)). That rule should apply here.

The Fifth District applied this deferential standard of review to the Barker tests, rather than itself re-weighing the evidence, in Fletcher v. State, 143 So. 3d 469, 472 (Fla. 5th DCA 2014) ("We conclude that in its well-written, detailed order, the trial court properly analyzed and applied the balancing test set forth by

14

the United States Supreme Court in Barker."). Our earlier opinion in another Barker case, Niles v. State, 120 So. 3d 658, 662 (Fla. 1st DCA 2013), noted that the trial court there failed to set forth findings of fact or explanation for either its denial of defendant's motion to dismiss or his motion for reconsideration. We noted that "Ordinarily, we would defer to the trial court's factual findings that are supported by competent, substantial evidence," but we applied a de novo standard of review because the trial court failed to set forth any findings of fact or conclusions of law. 120 So. 3d at 663-64. Here, in contrast, the trial court conducted a detailed evidentiary hearing, heard argument of counsel, and entered an order setting forth its findings of fact and the weight given to those facts. The facts were supported by competent, substantial evidence. We should review only for abuse of discretion the trial court's weighing of the evidence under Barker.

Other jurisdictions apply a deferential standard of review to trial courts' weighing of the Barker factors. See, e.g., McPherson v. Miers, 7 F. App'x 845, 847 (10th Cir. 2001) (affirming New Mexico state court's denial of inmate's Sixth Amendment claim upon finding that "the state court applied the correct rule of law [and] that it weighed the Barker factors in a reasonable fashion"); State v. Porter, 705 S.E.2d 636, 640 (Ga. 2011) ("The trial court's weighing of each factor and its balancing of all four factors—its ultimate judgment—are reviewed on appeal only for abuse of discretion."); Jenkins v. State, 947 So. 2d 270, 278 (Miss. 2006)

15

(affirming trial court's weighing of <u>Barker</u> factors because "[t]he trial court was well within its discretion in finding that the four <u>Barker</u> factors favored the State"); <u>State v. Selvage</u>, 687 N.E.2d 433, 437 (Ohio 1997) ("There is no indication that the trial court abused its discretion in applying the [<u>Barker</u>] test and making its determination, and that determination will be accorded due deference."). The proper appellate standard of review under <u>Barker</u> is an important issue that the Florida Supreme Court should review and resolve. On the specific facts of this case, I would not reweigh the evidence and I would affirm the trial court's order denying Defendant's motion to dismiss the charges against him.

In 2005, Defendant, on parole in Georgia, was charged by information with armed burglary, home invasion robbery, grand theft, and false imprisonment in Alachua County, Florida. The allegations against him are as follows. He intended to steal a high-visibility customized car parked at the house that he broke into, but needed the key to the anti-theft device attached to the steering wheel. Upon entering the house while carrying a gun, he encountered three young boys, ages 3, 10, and 14, who were home alone. He tore up a sheet, tied them up, and placed them in a bedroom while he waited for an adult to come home. When the mother of one of the boys arrived home with her seven-month-old baby, Defendant tied up the mother as well, later releasing her when the baby would not stop crying. He later tied up another teenage boy who came by the house. Over three hours after

first entering the house, he ultimately got the keys from the man of the house under threat of the gun. He was charged with grand theft of the car along with jewelry and a gun, in addition to false imprisonment. On the sheriff's sworn complaint, an information and arrest warrant were issued promptly. The warrant was not executed at that time, however, because Defendant was incarcerated in a Georgia prison within days after filing of the information and arrest warrant on the Florida charges. Defendant was taken into Florida custody on these charges upon his release from Georgia prison eight years later, and Defendant ultimately entered a plea of no contest to the Florida charges, reserving his right to appeal the disposition of his motions to dismiss.

The fundamental reason for the State's delay in bringing Defendant to trial in Florida was his eight-year incarceration in Georgia that commenced within days after issuance of the Florida warrant. Florida is within its rights to allow individuals in this situation to serve out their terms in other jurisdictions before trying them on their Florida charges. See § 775.15(5), Fla. Stat. (2004) (providing that statute of limitations is tolled as to a defendant who has been "timely charged by indictment or information or other charging document and who has not been arrested due to his or her absence from this state or has not been extradited for prosecution from another state"). While the statute of limitations and constitutional speedy trial considerations are independent legal inquiries, the Florida statute

17

making an incarceration delay reasonable is presumptively constitutional. Two of our sister courts have held on analogous facts that delays in prosecution due to incarceration or absence from Florida are not unreasonable delays. State v. Soebhag, 163 So. 3d 672, 673-74 (Fla. 2d DCA 2015); State v. Paulk, 946 So. 2d 1230, 1231 (Fla. 4th DCA 2007). Neither of these two cases addressed whether the "not unreasonable delay" could nevertheless constitute a violation of constitutional speedy trial rights. This issue also merits supreme court review, but on its face it favors affirming the trial court.

It is undisputed that Defendant had actual knowledge of the Florida charges. While it is true that this record does not contain a detainer on Defendant, circumstantial evidence in the record fairly strongly suggests that a detainer was filed. If the trial court and the parties had placed the same weight on the detainer that the majority has done here, the State's efforts to produce a copy of a detainer may have been fruitful. The evidence indicated that the State habitually filed detainers under these circumstances and believed it had filed one here. The record contains correspondence from the sheriff requesting Defendant's information from the prosecutor, suggesting that a detainer was being prepared. Florida was able to pick up Defendant immediately upon his release from Georgia prison, and therefore had to have been aware of his release date and operating under specific authority to take him into custody in another jurisdiction. Also relevant to the

18

analysis, once in custody in Florida, Defendant signed a waiver of speedy trial, reserving his legal arguments arising out of the lack of prosecution during his Georgia incarceration; and then never filed a notice of expiration of speedy trial or a demand for speedy trial, and delayed for over a year in setting a hearing on his motion asserting prosecutorial delay—acts that were his responsibility to pursue. Given this evidence, the trial court's weighing of the delay factor was not unreasonable and not an abuse of discretion.

The trial court likewise was within its discretion to weigh the <u>Barker</u> prejudice factors as it did. Defendant argued for an alibi defense in part on the basis of his having been in Georgia buying a car at "Johnny's" when these crimes were committed. He claimed he was with his then-wife and his sister, but did not want to call them as alibi witnesses because they both had felony criminal records that would undermine their credibility. Instead, he wanted to call Johnny, but Johnny could not be located at the time; and thus he argued that, assuming Johnny would be unavailable, he was prejudiced. However, Defendant was not without evidence to support this alibi argument. He presented a sales receipt from Johnny's dated the day of the crimes. He presented no evidence that Johnny would be a favorable witness or that he would even recall one individual present on the sales lot with others on any given day, let alone that specific day and time. Defendant's reluctance to call his felonious relatives to testify was not chargeable against the

19

State. The trial court's weighing of this issue against Defendant was not unreasonable and not an abuse of discretion.

The trial court's weighing of Defendant's second alibi argument likewise was within the court's discretion. Defendant claimed he had a look-alike who was using his identification on the date of the crimes. He argued he would be unable to prove that alibi by relying on the look-alike's arrest in Missouri because evidence in possession of Georgia authorities related to the Missouri arrest had been destroyed, but Defendant did not show that the alibi defense was credible or that it could not be established by means other than Georgia's records.

The trial court also reasonably and correctly concluded that the State's negligent destruction of physical evidence from the case—the sheet used to tie up the victims, the stolen jewelry and gun, and the photographic line-up from which five eye-witnesses identified Defendant promptly after the crimes occurred—was unfortunate, but not the result of bad faith and therefore not a due process violation or a factor to be weighed against the State. The State retained photographs of the jewelry, the gun, and the photo arrays. Defendant made no showing that the sheets would contain any DNA evidence at all, nor that it was likely any such evidence would be exculpatory rather than merely potentially useful. Witnesses had identified the stolen jewelry and the stolen gun as theirs. Defendant has conceded on appeal that under current and controlling United States Supreme Court

precedent, this Court must affirm on this factor. <u>See</u> <u>Arizona v. Youngblood</u>, 488 U.S. 51 (1988); <u>California v. Trombetta</u>, 467 U.S. 479 (1984). Given this authority and this concession by Defendant, we are not at liberty to reweigh the trial court's treatment of this evidence, which would not in any event constitute an abuse of discretion.

Comparing the majority and dissenting opinions demonstrates that reasonable minds can differ on how to weigh the <u>Barker</u> factors on this record. In my view we should apply the abuse of discretion standard of review to this classic weighing-of-evidence function and affirm the trial court's order denying Defendant's motion to dismiss, thus upholding Defendant's judgment and sentence.