WOLF, J.
Appellant raises a number of issues on appeal. We find one issue is dispositive and requires reversal. Appellant asserts the State violated his constitutional right to a speedy trial when it prosecuted him over eight years after it filed the information against him. Based on the unique facts of this case, we agree and reverse.

I. Facts

The State filed a nine-count information against appellant on August 1, 2005, alleging charges that included burglary while armed with a firearm and- home invasion robbery in Alachua County, Florida. Appellant, who had been on parole in Georgia, was arrested in Georgia on August 10, 2005, for violating his parole by committing these new law violations in Florida as well as new law violations in Georgia and *744 technical parole violations. His parole officer saw him the next day and orally advised him of all of the various charges against him; however, she did not serve him with any paperwork.
Appellant pled guilty to the technical violations of his parole and was re-sentenced to incarceration in Georgia. Appellant remained incarcerated in Georgia until his sentence expired nearly eight years later on June 14, 2013, at which point the State served an arrest warrant on appellant for his Alachua County charges. It is unclear whether the State ever entered a detainer for appellant; there is no detainer in the record.
Six months after his 2013 arrest in Florida, appellant filed a motion alleging the delay in prosecution violated his constitutional right to a speedy trial. Nearly a year passed before the evidentiary hearing on the motion was heard.
During the evidentiary hearing, the State alleged appellant should have requested a speedy trial in Florida while he was incarcerated in Georgia. Counsel for appellant contended that though appellant was informed by his Georgia parole officer about the Florida charges against him, he was never formally served with any documentation such as the information or evidence that a detainer had been lodged against him. Without proof that appellant had been advised of a detainer against him, defense counsel claimed appellant could not have been expected to follow the guidelines of requesting his own extradition pursuant to the Interstate Agreement on Detainers Act.
This claim was corroborated by the testimony of appellant’s Georgia parole officer, who stated that she orally informed appellant of the Florida charges against him but did not provide him with paperwork and did not advise him of the steps he should take to resolve the Florida charges against him because she was not familiar with the Florida justice system.
During the hearing, appellant alleged the delay in his prosecution had prejudiced him; he presented evidence that both an alibi witness and an eyewitness to the alleged crime who had stated appellant was not the perpetrator could no longer be found. It was also established that all of the physical evidence in the case had been destroyed because of the State’s negligence, including evidence from which DNA might have been obtained. The trial court denied appellant’s motion to dismiss; it found the delay in prosecution was caused by a negligent lack of diligence by the State, but also found the State’s lack of diligence did not impair appellant’s ability to present his defense, as appellant could still present his familial alibi witnesses.
On April 15, 2015, appellant pled nolo contendré to home invasion robbery with a firearm and was sentenced to five years’ imprisonment, but he reserved his right to appeal the denial of his motion to dismiss.

II. Analysis

Appellant claims his Sixth Amendment right to a speedy trial was violated when the State prosecuted him eight years after filing the information against him. The Sixth Amendment guarantees defendants the right to a speedy and public trial; however, “[u]nlike other procedural rights, it is ‘impossible to determine with precision when the right [to speedy trial] has been denied,’ as it cannot be said definitely ‘how long is too long in a system where justice is supposed to be swift but deliberate.’” Niles v. State, 120 So.3d 658, 663 (Fla. 1st DCA 2013) (quoting Barker v. Wingo, 407 U.S. 514, 521, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)).
Based on the amorphous nature of the inquiry, to determine whether a defendant’s constitutional speedy trial *745 right has been violated, a court must look to the totality of the circumstances on a case-by-case basis. Howell v. State, 418 So.2d 1164, 1171 (Fla. 1st DCA 1982). The United States Supreme Court has delineated four factors to guide the determination of whether the constitutional -speedy trial right was violated: “(1) the length of the delay, e.g., whether the delay is presumptively prejudicial; (2) the reason for delay; (3) whether the appellant has timely asserted his rights; and (4) the existence of actual prejudice as a result of the delay.” Id. (citing Barker, 407 U.S. at 530-33, 92 S.Ct. 2182). “The test is one in which each factor is balanced against the others.” Id.
The trial court found appellant’s constitutional speedy trial right had not been violated, although the length of the delay—eight years—was presumptively prejudicial, because (1) the delay was not intentional, but rather, negligent; (2) appellant failed to timely assert his right to a speedy trial; and (3) appellant was not prejudiced by the delay.
“Generally, the determination of whether a defendant’s constitutional right to a speedy trial has been violated presents a mixed question of law and fact.” Niles, 120 So.3d at 663. We review the trial court’s factual findings under the competent substantial evidence standard of review and its legal conclusions de novo. Id. Under the unique circumstances of this case, we hold the State violated appellant’s constitutional speedy trial right and reverse the trial court’s denial of appellant’s motion to dismiss. In coming to this conclusion, we consider each of the four factors presented in Barker. We outline those factors below.

A. Length of Delay

The State conceded that the eight-year delay between the filing of appellant’s information and his continued prosecution was substantial and presumptively prejudicial. Thus, this factor should weigh against the State.

B. Reason for Delay

The trial court found the State’s negligence was the reason for the delay in prosecution, but did not weigh this factor heavily against the State in part because the trial court also found appellant failed to timely assert his right to a speedy trial and thereby contributed to the State’s continued delay in prosecuting him. The trial court did not explicitly note how the State was negligent; however, the only negligent act by the State was its failure to timely file a detainer against appellant, which would have informed him of his right to have his Florida charges resolved in a timely manner.
The State has a duty to act with due diligence to secure the speedy return of prisoners held in other states. Edmaiston v, Neil, 452 F.2d 494, 498 (6th Cir. 1971); Hoskins v. Wainwright, 440 F.2d 69, 71-72 (5th Cir.1971). The first step the State must take to secure such a speedy return is to lodge a detainer against the defendant in the state in which the defendant is incarcerated. A detainer “⅛ a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent.’” Moore v. State, 137 So.3d 611, 612 n. 1 (Fla. 4th DCA 2014) (quoting Gethers v. State, 838 So.2d 504, 507 (Fla.2003)). “Detainers informally put officials on notice that the defendant is wanted in another jurisdiction.” Gethers, 838 So.2d at 507.
Pursuant to the Interstate Agreement on Detainers Act, once a detainer has been lodged against a defendant, the warden or other official having custody of the prison *746 er “shall promptly inform the prisoner of the source and contents of any detainer lodged against him or her and shall also inform the prisoner of his or her right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based.” § 941.45(Art, III)(c), Fla. Stat. (2004). It is through this notice of a detainer that the defendant is informed of his right to request a speedy trial on the pending out-of-state charges.
Here, the State failed to provide evidence that it lodged a detainer against appellant.
During the evidentiary hearing on appellant’s motion to dismiss, defense counsel questioned when—and even if—the State had lodged a detainer against appellant while he was incarcerated in Georgia for eight years. At that point, it was the State’s burden to prove that it had filed a detainer against appellant in a timely manner. See Howell, 418 So.2d at 1173 (noting “[t]he burden to account for such [prosecu-torial] delay, however, is decidedly upon the prosecution”); Niles, 120 So.3d at 664 (“‘Because the prosecutor and the court have an affirmative constitutional obligation to try the defendant in a timely manner ... the burden is on the prosecution to explain the cause of the pretrial delay.’ ” (quoting United States v. Ingram, 446 F.3d 1332, 1337 (11th Cir.2006))).
The State presented no evidence that it ever lodged a detainer against appellant. Though Assistant State Attorney Ralph Grabel testified that the office’s policy in 2005 was not to extradite out-of-state defendants, but rather to allow their detain-ers to remain intact until their out-of-state sentences had expired, Mr. Grabel also testified that he had no specific recollection of appellant’s case and made no mention of when, or even if, the office had lodged a detainer against him.
Thus, the record confirms the State failed to meet its burden of proving it had lodged a detainer against appellant. As such, we note this factor should be weighed against the State. Howell, 418 So.2d at 1172 (noting that although negligence in prosecuting should be “weighed less heavily against the state than an intentional delay,” the State should nonetheless “bear the burden of fault”). See also Doggett v. United States, 505 U.S. 647, 657, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (noting that negligence should be “weighed more lightly than a deliberate intent to harm the accused’s defense,” but also noting that “the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows”).

C. Whether Appellant Timely Asserted His Right

The State alleges appellant’s failure to assert his constitutional speedy trial right during his eight-year incarceration in Georgia should be weighed heavily against him, and the trial court agreed. It is true appellant did not assert his right to speedy trial while incarcerated in Georgia; however, as -noted above, his failure to assert that right was due in part to the State’s negligence. Appellant contended he was unable to request a speedy trial through the procedures outlined in the Interstate Agreement on Detainers Act because he had never been informed that a detainer was lodged against him for his Florida charges. We agree that the State failed to meet its burden of proving it had filed a detainer against appellant, which would have then shifted the burden to appellant pursuant to the Act to request a speedy trial.
Typically, “[t]he defendant’s assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it *747 difficult for a defendant to prove that he was denied a speedy trial.” Barker, 407 U.S. at 531-32, 92 S.Ct. 2182.
In the current case, appellant did not assert his speedy trial right until eight years after the State filed the information against him and six months after his arrest in Florida. Typically, appellant’s failure to assert his speedy trial right would weigh heavily against him.
However, the unique circumstances in this case indicate that although appellant was made aware of the Florida charges against him by his parole officer, he was never served with a copy of the information, nor was he notified that a detainer had been filed against him, and he had the right to request a speedy disposition of his Florida charges even while incarcerated in Georgia. Because the State failed to prove in this case that it took the necessary steps to put appellant on notice of its continued interest in prosecuting, this is a neutral factor.
■ D. Whether the Delay Resulted in Actual Prejudice to Appellant ■
The trial court determined that appellant was not actually prejudiced by the eight-year delay in prosecution in part because he was still able to present many of his alibi witnesses who were his family members. We disagree.
“Perhaps the greatest evil which the Sixth Amendment speedy trial right proposes to counter is the potential for a witness’s memory to lapse in regard to material matters as the delay for trial increases.” Howell, 418 So.2d at 1168 (citing Barker, 407 U.S. at 521, 92 S.Gt. 2182). Though the constitutional speedy trial right is intended to ensure trial occurs before the defense is impaired by problems resulting from delay such as memory lapse, “impairment of one’s defense is the most difficult form of speedy trial prejudice to prove because time’s erosion of exculpatory evidence and testimony ‘can rarely be shown.’". Doggett, 505 U.S. at 655, 112 S.Ct. 2686 (quoting Barker, 407 U.S. at 532, 92 S.Ct. 2182).
Here, we find appellant proved the necessary prejudice to his defense which resulted from the prosecutorial delay.
Appellant’s defense was a defense of misidentification. He claimed that an unrelated acquaintance known to have looked very much like him was the one who committed the crime. To support this theory of defense, appellant wanted to present (1) an alibi witness, the owner of Johnny’s Auto, who had been present in Georgia when appellant purchased a car with his family on the date of the burglary; (2) an eyewitness who, when shown a photographic array, stated appellant was not the perpetrator; and (3) evidence from the Missouri police department, where appellant’s look-alike was arrested for different crimes and had held himself out to be appellant by presenting appellant’s identification until a fingerprint analyst realized the look-alike was not appellant.
Appellant alleges that as a result of the prosecutorial delay, both the alibi witness and the eyewitness were now either unavailable or deceased, and the Missouri police department evidence had been destroyed.
The trial court found the unavailability of the witnesses and the destruction of the Missouri police records did not amount to actual prejudice because appellant could still present his alibi defense—that he was purchasing a car at the time of the crimes—through the testimony of familial witnesses. We disagree.
The Supreme Court has held that the death or unavailability of witnesses and the loss of police records is “abundant evidence of actual prejudice.” Dickey v. Florida, 398 U.S. 30, 38, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970). This court has held the *748 same. State v. Hope, 89 So.3d 1132, 1137 (Fla. 1st DCA 2012).
Here, the testimony of the alibi witness might not have aided appellant in his defense because, as noted by the trial court, the alibi witness might not have testified that he was with appellant on the day the crimes occurred. However, it is indisputable that the testimony of the eyewitness who stated appellant was not the perpetrator and the evidence from the Missouri police department indicating appellant’s look-alike had been arrested in Missouri and held himself out to be appellant there would have assisted appellant in proving his misidentification defense. Thus, the loss of the testimony of that eyewitness and the Missouri documentation as a result of the prosecutorial delay prejudiced appellant.
Further, as noted by appellant, in 2009, four years after his information had been filed, but four years before his arrest in Florida, the State destroyed all of the physical evidence from the case. That evidence included the firearm appellant allegedly used to commit the burglary and kidnapping, the jewelry allegedly stolen during the crime, and bed sheets manipulated by the perpetrator to tie up the victims. Though Assistant State Attorney Grabel testified during a hearing on the destruction of evidence that the destruction was inadvertent and the trial court agreed, its destruction prevented appellant from testing any of that evidence for DNA.
In conclusion, after evaluating the four Barker factors, we find the eight-year prosecutorial delay in the current case violated appellant’s constitutional right to a speedy trial. First, the length of the delay was presumptively prejudicial. Second, the delay was due to the State’s negligence in failing to lodge a detainer against appellant, which would have notified appellant of his right to a speedy trial. Third, appellant’s failure to assert his right to a speedy trial while incarcerated in Georgia is a neutral factor, as the State failed to prove appellant was made aware that he had a right to request a speedy trial pursuant to the Interstate Agreement on- Detainers Act. Fourth, appellant suffered actual prejudice as a result of the prosecutorial delay. This factor weighs heavily against the State.
As such, we find appellant’s constitutional right to a speedy trial was violated based on the specific circumstances present in this case and REVERSE the trial court’s denial of his motion to dismiss'.
WETHERELL, J., concurs; KELSEY, J., Dissents with Opinion.