[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13301

_____

JAMES RUSSELL JOHNSON,

Petitioner-Appellant,

*versus*

STATE OF FLORIDA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 5:20-cv-00131-TKW-EMT

_____

Before NEWSOM and MARCUS, Circuit Judges, and LAWSON,* District Judge.

MARCUS, Circuit Judge:

James Johnson, a Florida pretrial defendant awaiting trial on state criminal charges, has filed a petition in federal court alleging that his Sixth Amendment right to a speedy trial has been violated as a result of temporary measures suspending criminal jury trials in response to the COVID-19 pandemic. He seeks the dismissal of all of his criminal charges, traveling under the federal habeas provision found in 28 U.S.C. § 2241.

However, because Johnson never raised a Sixth Amendment claim in the state courts, and because he has given us no basis for intervening in his state criminal prosecution, we affirm the district court's dismissal of his petition.

I.

These are the essential facts and procedural history surrounding this case. In July 2019, Johnson was arrested for drug and ammunition offenses and was released on bond. But, on March 13, 2020, Johnson was arrested *again* for new drug and firearm offenses and his bond was revoked. By this point, Johnson had filed one *pro se* demand for a speedy trial pursuant to Florida Rule of Criminal Procedure 3.191, and upon his incarceration, while represented by

---

* Honorable Roger H. Lawson, Jr., United States District Judge, for the Middle District of Georgia, sitting by designation.

counsel, he filed another *pro se* demand.  Prior to the second demand, however, the Supreme Court of Florida had issued an administrative order in response to the growing COVID-19 pandemic, which temporarily suspended the state of Florida's "speedy trial" procedural requirements in an effort "to mitigate the effects of COVID-19 on the courts and court participants."  Supreme Court of Florida Administrative Order No. AOSC20-13 (Mar. 13, 2020).  Despite the Florida Supreme Court's suspension of the state's speedy-trial rules, Johnson repeatedly claimed a violation of those rules in the state courts, ultimately asking the state trial court and then an appeals court to dismiss his charges.  Both courts denied Johnson relief.  *Johnson v. State*, 314 So. 3d 258 (Fla. Dist. Ct. App. 2021) (table decision).  Nevertheless, Johnson was granted a medical furlough on the state's motion in December 2020, and he has remained out of jail since then.  The parties are currently in the discovery phase of his criminal trial.[1]

Shortly after Johnson lodged his second speedy-trial demand in state court, he filed the instant federal habeas petition *pro se* under 28 U.S.C. § 2241 in the United States District Court for the Northern District of Florida, claiming, in relevant part, a violation of his Sixth Amendment right to a speedy trial.  Johnson now appeals, through counsel, the district court's dismissal of his habeas petition.  The district court rejected his federal petition on two

---

[1] The state trial court docket can be found at https://www.civitekflorida.com/ocrs/app/partyCaseSummary.xhtml.

grounds. First, the trial court found that Johnson had failed to exhaust his available state law remedies concerning his Sixth Amendment claim or show why the exhaustion requirement should be excused. In the alternative, the district court concluded that it should abstain from adjudicating the petitioner's federal constitutional claim pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), because he was asking a federal court to interfere with an ongoing state criminal proceeding and he had not shown any "special circumstances" warranting the unusual exercise of federal jurisdiction.

We granted a certificate of appealability to answer one question: "[w]hether the delay in Mr. Johnson's state criminal proceedings, due to COVID-19, is a circumstance warranting federal habeas relief, pursuant to 28 U.S.C. § 2241?"

## II.

We review *de novo* the dismissal of a habeas petition on legal grounds, including the application of the doctrine of exhaustion. *Sawyer v. Holder*, 326 F.3d 1363, 1365 n.4 (11th Cir. 2003); *Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016). And we review a district court's determination to abstain from exercising jurisdiction for abuse of discretion. *Wexler v. Lepore*, 385 F.3d 1336, 1338 (11th Cir. 2004).

## A.

First, we are unpersuaded by Johnson's claim that the district court erred in dismissing his § 2241 petition for the failure to

exhaust.  It is by now well established that a district court may not grant a § 2241 petition "unless the petitioner has exhausted all available state remedies." *See Georgalis v. Dixon*, 776 F.2d 261, 262 (11th Cir. 1985); *see also Hughes v. Att'y Gen. of Fla.*, 377 F.3d 1258, 1262 n.4 (11th Cir. 2004) (explaining that we apply the exhaustion requirement to a state pretrial detainee's § 2241 petition). Plainly, the purpose of the exhaustion requirement is to afford the state court "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation marks omitted).  The exhaustion doctrine was crafted on federalism grounds to protect the state courts' opportunity to confront and resolve any constitutional issues arising within their jurisdiction and to limit federal interference in the state adjudicatory process. *See Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 490–91 (1973).

Exhaustion has two essential requirements relevant to this case.  First, "to be exhausted, a federal claim must be fairly presented to the state courts." *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005).  "It is not sufficient merely that the federal habeas petitioner has been through the state courts, nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1343–44 (11th Cir. 2004) (citations omitted).  "Rather," to "ensure that state courts have the first opportunity to hear all claims, federal courts 'have required a state prisoner to present the state courts with the

same claim he urges upon the federal courts.'" *McNair*, 416 F.3d at 1302 (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). To do that, a state-court prisoner must present his claim to the state court in a manner that would allow a "reasonable reader" to understand the legal and factual foundation for each claim. *Kelley*, 377 F.3d at 1344–45. Second, a prisoner must take his claim "to the state's highest court, either on direct appeal or on collateral review." *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010).

The parties seem to agree that Johnson did not exhaust his state-court remedies. Johnson presses a Sixth Amendment speedy-trial claim, arguing that, "[a]s a Florida pretrial detainee in the age of COVID-19, Johnson is in legal limbo as he awaits an undetermined trial date, in violation of the Sixth Amendment's Speedy Trial Clause." In the state courts, however, Johnson grounded his argument *solely* on Florida's speedy-trial rule, found in the Florida Rules of Criminal Procedure, which provides that "every person charged with a crime shall be brought to trial within . . . 175 days of arrest if the crime charged is a felony." Fla. R. Crim. P. 3.191(a). Beginning with his first demand for a speedy trial and continuing throughout his many filings in state court, Johnson cited only to the Florida speedy-trial rule and to nothing else.

Notably, Johnson *never* cited the U.S. Constitution or the Sixth Amendment. Only in a single sentence of a 14-page motion seeking to proceed *pro se* did Johnson so much as reference the Sixth Amendment, when he argued that proceeding *pro se* "is a VI Amendment issue, as speedy trial issue, [because] every day

Defendant is deprived filing material, is a longer trial process." But, as we've noted, Johnson made this one reference to the U.S. Constitution in a motion to proceed *pro se* -- where he made the passing observation that if he could not proceed *pro se*, then, perhaps, his Sixth Amendment rights would be harmed -- and not in his speedy-trial filings. That contingent claim did not state the "particular legal basis" he now pursues. *Kelley*, 377 F.3d at 1345, 1350. If anything, Johnson's early reference to the Sixth Amendment suggests that he knew about the Sixth Amendment right to a speedy trial and chose not to proceed on that ground in state court. Nor, moreover, did the singular reference to the word "prejudice" in a sentence in his "Amended Petition for Emergency Writ of Prohibition" alert the state courts that he was asserting a Sixth Amendment speedy-trial claim. And this seems especially so since that sentence ended by making a reference only to the Florida Rules of Criminal Procedure.

On this record, we cannot say that Johnson's speedy-trial filings -- which expressly referenced only the Florida rule -- fairly raised a federal constitutional speedy-trial claim. We add that Florida's rule "is a procedural protection and, except for the right to due process under the rule, does not reach constitutional dimension." *State v. Bivona*, 496 So. 2d 130, 133 (Fla. 1986); *see also Brown v. Wainwright*, 495 F.2d 559, 560 (5th Cir. 1974) (rejecting Sixth Amendment speedy-trial claim where the appellants had exhausted a Florida Rule 3.191 claim in state court but had not exhausted the constitutional claim in state court; "Appellant must

exhaust his Florida remedies [as to his constitutional claim] as a condition precedent to federal relief").[2] Nor is there any indication that the state court somehow surmised that Johnson had raised a federal constitutional claim -- it never discussed the Sixth Amendment claim, even implicitly.[3]

Recognizing this problem, Johnson now argues that he did not need to exhaust because doing so would have been futile. Again, we are unpersuaded. To establish futility, Johnson must demonstrate that the "state court has unreasonably or without explanation failed to address petitions for relief." *Hollis v. Davis*, 941 F.2d 1471, 1475 (11th Cir. 1991). So, for example, the former Fifth Circuit, in binding precedent, has excused noncompliance with the exhaustion doctrine when the state-court docket is "completely dormant for over one year" and the "state has offered [] no reason for its torpor." *Breazeale v. Bradley*, 582 F.2d 5, 6 (5th Cir. 1978).

---

[2] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (establishing that Fifth Circuit decisions from before October 1, 1981 are binding in this Circuit).

[3] We are also unpersuaded by his suggestion that the state trial court must have known he was raising a Sixth Amendment claim when its "Order Striking Defendant's Notice of Expiration of Speedy Trial" pursuant to Fla. R. Crim. P. 3.191 cited to the federal district court's orders in the instant habeas case. Johnson acknowledges that the state trial court first cited to the Florida speedy-trial rule, and then cited to the federal materials only as a "see also." This affords no indication that it was ruling on a federal constitutional claim.

But in this case, Johnson is unable to complain about the state courts' delay in considering his Sixth Amendment claim since he never presented it to them.  This is so even though, when Florida's rule-based speedy-trial right was suspended because of COVID-19, the Supreme Court of Florida made it clear that in-person proceedings could go forward when "[r]emote conduct of the proceeding is inconsistent with the United States or Florida Constitution." Supreme Court of Florida Administrative Order No. AOSC20-23 (June 16, 2020).  Moreover, the Florida Supreme Court repeatedly clarified and ordered that "[t]he presiding judge in all cases must consider the constitutional rights of . . . criminal defendants." *Id.*  And in any event, the state courts resolved Johnson's rules-based speedy-trial claim within a reasonable period of time.  When he filed his first speedy-trial demand in September 2019, he did not request a hearing until October 2020, and, soon thereafter, the state trial court conducted a hearing in November 2020 and ruled on his claim that same month.  The state appeals court resolved his petition for writ of prohibition on the speedy-trial issue within five months of his filing, in April 2021.  Johnson has not shown that the state courts could not, nor that they would not have acted on his Sixth Amendment speedy-trial claim, had he raised it.

Moreover, the Supreme Court has unambiguously instructed us that "federal courts are not at liberty to presume that the decision of the state court would be otherwise than is required by the fundamental law of the land." *Schlesinger v. Councilman*, 420 U.S. 738, 756 (1975) (cleaned up).  The Supreme Court has gone

so far as to observe that "[e]ven a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid." *Engle v. Isaac*, 456 U.S. 107, 130 (1982).

Nevertheless, Johnson cites *Smith v. State*, 310 So. 3d 1101 (Fla. Dist. Ct. App. 2020), but *Smith* did not purport to decide a Sixth Amendment claim, much less foreclose Johnson's claim. Rather, *Smith* dealt with a challenge to the state's delayed addition of a charge to an information. There, the state appeals court recognized that "under ordinary circumstances," because Florida Rule of Criminal Procedure 3.191 requires the state to bring felony charges to trial within 175 days of arrest, the state cannot add charges "arising from the same facts and circumstances" to an information after the expiration of the 175-day period. *Id.* at 1102. So when the state added a new charge to a defendant's information after the 175-day period had ended -- while the Florida Supreme Court, in response to the COVID-19 pandemic, had suspended the requirement to bring defendants to trial within 175 days -- the defendant in *Smith* sought to quash the new charge. He argued that the Florida Supreme Court's COVID-19 order applied only to the time to bring defendants to trial, not to the time to amend an information. *Id.* at 1102–03. The state appeals court disagreed, finding that, as a matter of the administrative order's plain text, the Supreme Court of Florida intended to suspend all time limits set by Rule 3.191. *Id.* at 1103.

Thus, *Smith* addressed only the time period to amend an information; it did not deal with the requirement to bring a defendant to trial, nor, importantly, did it address a defendant's Sixth Amendment right to a speedy trial. And, in any event, even if *Smith* were a Sixth Amendment case, it still would not excuse Johnson's failure to exhaust his claim. As Johnson acknowledges, the Sixth Amendment inquiry is an individualized one, which means that *Smith* -- a case based on wholly different facts and theories -- could not excuse Johnson's lack of exhaustion. Moreover, Johnson's reliance on *Smith* fails for another reason --namely, it wasn't even a decision of the state supreme court. *See Layton v. Carson*, 479 F.2d 1275, 1276 (5th Cir. 1973) (holding that a petitioner needn't exhaust "[i]f the state's *highest* court has recently rendered an adverse decision in an identical case") (emphasis added).

To this day, Johnson has not cited any new cases from Florida's appellate courts that even suggest futility. Johnson has not shown that pursuing a Sixth Amendment claim in Florida's courts would have been futile, and the district court did not err in dismissing his § 2241 petition for lack of exhaustion.

B.

Johnson's petition is barred for another independent reason: the application of the abstention doctrine under *Younger v. Harris*, 401 U.S. 37 (1971). *Younger* established that, based on principles of comity and federalism, a federal court should not interfere with ongoing state criminal proceedings where the state court conviction and/or sentence is not yet final. *See id*. at 43–45. *Younger*

abstention is required when: (1) state proceedings, judicial in nature, are pending; (2) the state proceedings involve important state interests; and (3) the state proceedings afford adequate opportunity to raise the constitutional issue. *Id.* There are three narrow exceptions to the abstention doctrine: (1) there is evidence of state proceedings motivated by bad faith; (2) irreparable injury would occur; or (3) there is no adequate alternative state forum where the constitutional issues can be raised. *Id.* at 46–49; *Kugler v. Helfant*, 421 U.S. 117, 123–25 (1975).

Further, even where *Younger* does not necessarily bar a state prisoner from seeking a federal order requiring that he be brought to trial, "federal habeas corpus does not lie, absent special circumstances, to adjudicate the merits of an *affirmative defense* to a state criminal charge prior to a judgment of conviction by a state court." *Brown v. Estelle*, 530 F.2d 1280, 1282–83 (5th Cir. 1976) (emphasis added; quotation marks omitted). In *Brown*, the former Fifth Circuit held that the state's denial of the right to a speedy trial is not usually a "special circumstance." *Id.* at 1283. The Court recognized that "an attempt to force the state to go to trial" may assert a valid federal claim, but that "an attempt to dismiss an indictment or otherwise prevent a prosecution" -- just like Johnson makes in this case -- is not a sufficient ground to enjoin the state proceeding. *Id.*

This principle has been long accepted in our sister Circuits. *See Gates v. Strain*, 885 F.3d 874, 882 (5th Cir. 2018) ("the alleged denial of a speedy trial is not itself a legitimate basis on which to

enjoin a state criminal proceeding"); *Brown v. Ahern*, 676 F.3d 899, 902–03 (9th Cir. 2012) (holding that federal courts may not enjoin state criminal prosecution on basis of alleged speedy-trial violation absent an independent showing of bad faith or other extraordinary circumstances); *Brazell v. Boyd*, 991 F.2d 787 (4th Cir. 1993) (unpublished) (holding that a "federal court should abstain from considering [speedy-trial claim] at the pre-trial stage" of a state prosecution where "special circumstances" were "nonexistent"); *Moore v. DeYoung*, 515 F.2d 437, 449 (3d Cir. 1975) (holding that the petitioner's "claim of alleged denial of the right to a speedy trial [by the state court] does not fall within the extraordinary circumstances envisioned in *Younger*").

Johnson agrees that the first two *Younger* prongs have been met:  his criminal case is ongoing and a state's criminal prosecution implicates important interests concerning the state's police power. Johnson also acknowledges that he is seeking *discharge*, not a prompt trial, and he does not dispute that *Younger* typically bars claims like his, which seek discharge as a remedy for a speedy-trial violation.[4]  Rather, Johnson takes issue with the third prong of the

---

[4] District courts around the country consistently have applied the *Younger* doctrine in speedy-trial cases arising during the COVID-19 pandemic. *E.g.*, *Seay v. Price*, No. CA 21-0435-JB-MU, 2021 WL 4891809, at *3 (S.D. Ala. Oct. 7, 2021) (denying relief based on lack of exhaustion and abstention grounds where the petitioner appeared to be seeking dismissal of state charges as a remedy for a speedy-trial violation); *Wade v. Wichita Cty.*, No. 7:21-cv-00001-O-BP, 2021 WL 932050, at *2 (N.D. Tex. Feb. 25, 2021) (denying relief based on lack of exhaustion and abstention grounds where the petitioner sought

14                        Opinion of the Court                        20-13301

*Younger* test, claiming that he has not had an adequate opportunity to raise his Sixth Amendment claim. Again, we remain unpersuaded.

First, he says that *Younger* is inapplicable because the Florida courts have "delay[ed]" in deciding his claim. But, as we've described, the state courts have not delayed in deciding Johnson's speedy-trial claim. The trial court decided his rules-based speedy-trial claim one month after he properly requested a hearing, the appellate court decided his writ of prohibition less than five months after he filed it, and no state court has decided his Sixth Amendment claim because he never brought one.

Alternatively, Johnson says that *Younger* is inapplicable because the Florida courts are "incapable of fairly and fully

---

dismissal of state charges as a remedy for a speedy-trial violation); *Marshalek v. Warden of Hudson Cty. Corr. Ctr.*, No. 21-cv-957, 2021 WL 423758, at *2 (D.N.J. Feb. 8, 2021) (denying relief based on lack of exhaustion and abstention grounds where the petitioner appeared to be seeking dismissal of state charges as a remedy for a speedy-trial violation); *Want v. Arkansas*, No. 4:20-cv-00696-KGB, 2021 WL 262240, at *2 (E.D. Ark. Jan. 26, 2021) (denying relief based on lack of exhaustion and abstention grounds where the petitioner sought dismissal of state charges as a remedy for a speedy-trial violation); *Moore v. Westmoreland Cty. Dist. Att'y's Office*, No. 2:20-cv-672, 2020 WL 6324173, at *2 (W.D. Pa. Sept. 28, 2020) (denying relief based on lack of exhaustion and abstention grounds where the petitioner sought dismissal of state charges as a remedy for a speedy-trial violation); *Harrison v. Fortney*, No. 20-cv-792, 2020 WL 4059828, at *1–2 (W.D. Wash. June 24, 2020) (denying relief based on abstention grounds where the petitioner appeared to be seeking dismissal of state charges as a remedy for a speedy-trial violation).

adjudicating the federal issues before it," *Kugler*, 421 U.S. at 124, as shown by their "flagrant[] and patent[]" violations of the Sixth Amendment and by the peculiarity of COVID-19.  But again, Johnson has not raised a Sixth Amendment claim in Florida's courts -- nor has he cited to any Florida cases analyzing a Sixth Amendment speedy-trial claim in the time of COVID-19.  Thus, he has no basis to claim that Florida's courts have disregarded the Sixth Amendment.  The state courts have already considered his rules-based claim, and he has offered nothing to suggest that they would not have considered his constitutional claim as well.  Nor that they could not do so in the future.  In fact, the state courts will have the ability to take yet another look at his rules-based claim -- plus any Sixth Amendment claim he may raise -- once his trial gets underway. *See Pitchess v. Davis*, 421 U.S. 482, 488 (1975) (explaining that the denial of a pretrial application for writ of prohibition does not bar a party from raising the same points on post-trial direct appeal); *Crockett v. State*, 206 So. 3d 742, 744 (Fla. Dist. Ct. App. 2016) (reviewing, on direct appeal, a defendant's claim that delay between the filing of an information and the defendant's continued prosecution violated the defendant's Sixth Amendment right to speedy trial); *Brown v. State*, 843 So. 2d 328, 330 (Fla. Dist. Ct. App. 2003) (reviewing, on direct appeal, a defendant's rule-based speedy-trial claim, and holding that the denial of a petition for writ of prohibition in which a speedy trial claim is raised does not prevent review of the claim on direct appeal).

In any event, the "state judicial system may retain undisturbed jurisdiction despite possibly erroneous trial court disposition of constitutional issues." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 609 n.20 (1975). "Mere errors or mistakes by the state trial court are not special circumstances which justify federal intervention." *Duke v. Texas*, 477 F.2d 244, 252 (5th Cir. 1973). To put it simply, a federal court may not intervene and enjoin a state-court proceeding whenever a federal judge disagrees with his state-court sister. *Hicks v. Miranda*, 422 U.S. 332, 351–52 (1975). Were it otherwise, "bad faith and harassment would be present in every case in which a state" court decision is later found to be "unconstitutional, and the rule of *Younger* . . . would be swallowed up by its exception." *Id.* at 352. As we've explained:

> [F]or abstention purposes, whether a claim would likely be successful on the merits in the state court is not what matters. Instead, what matters is whether the plaintiff is *procedurally* prevented from raising his constitutional claims in the state courts, from which a certiorari petition can be filed seeking review on the merits in the United States Supreme Court. *See Moore v. Sims*, 442 U.S. 415, 432 . . . (1979) (holding that the federal plaintiff has burden to show "that state procedural law barred presentation of [its] claims"); *cf. Engle v. Isaac*, 456 U.S. 107, 130 . . . (1982) (in federal habeas proceedings perceived futility on

the merits does not excuse failure to raise claim in state court).

*Pompey v. Broward Cty.*, 95 F.3d 1543, 1551 (11th Cir. 1996).

As for Johnson's argument that because COVID-19 has caused "hectic times," federal courts should intercede, the fact that an issue is "multifaceted" or "complex" does not support federal intervention. *Moore*, 442 U.S. at 424–28. On the contrary, "state courts are fully competent to decide federal constitutional issues." *Swain v. Pressley*, 430 U.S. 372, 383 (1977). In fact, they do so everyday. Johnson "is in truth urging" us to intercede "on the assumption that state judges will not be faithful to their constitutional responsibilities." *Huffman*, 420 U.S. at 611. That is not a proper reason to disturb a state-court proceeding. *Id.*

And while we have no doubt that COVID-19 is an "exceptional circumstance," that does not support the argument that we should intervene here. Johnson seeks to avoid his trial completely due to the state's postponement of trials during the COVID-19 epidemic, but postponing Johnson's trial is a recognition of COVID-19's "extraordinary circumstances." It's also not an altogether convincing argument for Johnson to make since he has remained out of jail on a medical furlough as of December 2020.

Finally, Johnson suggests that we should dispense with *Younger* and intercede based on freewheeling interest weighing. But he cites no case that supports abandoning the long-held *Younger* abstention doctrine at its most applicable -- when a party

urges a federal court to enjoin a pending state criminal case. If anything, the cases Johnson cites indicate that *Younger* should apply in precisely this context. Thus, for example, in *Baggett v. Department of Professional Regulation*, we declined to apply *Younger* to defer to a state administrative board applying a clearly preempted legislative scheme, but there, we distinguished those cases where a defendant has attempted "to defend himself against otherwise valid and proper state charges on the basis that . . . [his] prosecution[] violated some . . . federally protected right." 717 F.2d 521, 524 (11th Cir. 1983). Those types of cases -- just like Johnson's -- are at the core of the *Younger* doctrine. *Moore*, 442 U.S. at 423.

This is a classic case for *Younger* abstention. Johnson faces valid state criminal charges. He believes that he has a potential constitutional defense to those charges, but, as we've explained, he can raise that defense in the state courts of Florida.[5]

**AFFIRMED**.

---

[5] We commend Johnson's appointed counsel for taking on and vigorously prosecuting this appeal.